1  Gary M. Anderson (State Bar No. 97385)
   Jessica Brookhart-Knost (State Bar No. 246244)
2  FULWIDER PATTON LLP
   Howard Hughes Center
3  6060 Center Drive, Tenth Floor
   Los Angeles, CA 90045
4  Telephone: (310) 824-5555
   Facsimile: (310) 824-9696
5  litdocketla@fulpat.com

6  Attorneys for Rally Manufacturing, Inc.

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  JENS ERIK SORENSEN, as Trustee of          CASE NO. 08-CV-00305 BTM CAB
    SORENSEN RESEARCH AND
12  DEVELOPMENT TRUST                          Judge Barry Ted Moskowitz
                                               Magistrate Judge Cathy Ann
13                                             Bencivengo
                                               Courtroom: 15
14              Plaintiff,

15         v.                                  Date:    April 25, 2008
                                               Time:    11:00 am
16  Rally Manufacturing, Inc., a Florida
    corporation                                **Declaration of Matthew Stavish in**
17                                             **Support of Motion to Stay Litigation**
                Defendant.                     **Pending Outcome of the U.S.Patent**
18                                             **and Trademark Office**
                                               **Reexamination of the Patent-In-Suit**
19

20

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1    Defendant respectfully submits attached hereto, the Declaration of Matthew

2  Stavish in Support of Defendant's Motion to Stay this litigation pending the outcome

3  of the U.S. Patent and Trademark Office reexamination of the patent-in-suit.

4                                    Respectfully submitted,

5                                    FULWIDER PATTON, LLP

6

7  Dated: March 17, 2008           By:  s/ Gary M. Anderson
                                        Gary M. Anderson
8                                       Jessica Brookhart-Knost
                                        Attorneys for Defendant
9                                       RALLY MANUFACTURING, INC.

10

11                                  BERENATO, WHITE & STAVISH

12

13                                  Matthew Stavish
                                    Berenato, White & Stavish
14                                  6550 Rock Spring Drive
                                    Suite 240
15                                  Bethesda, MD 20817
                                    ph: 301-896-0600
16                                  fax 301-896-0607
                                    mstavish@bwsiplaw.com
17
                                    Attorneys for Defendant
18                                  RALLY MANUFACTURING, INC.

19

20

21

22

23

24

25

26

27

28

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST | ) ) ) | CASE NO.:08-cv-00305 BTM CAB |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| RALLY MANUFACTURING INC., a Florida Corporation, | ) ) ) | |
| | ) | |
| Defendant | ) ) | |

_____

**DECLARATION OF MATTHEW STAVISH IN SUPPORT OF MOTION TO STAY LITIGATION PENDING OUTCOME OF THE U.S. PATENT AND TRADEMARK OFFICE REEXAMINATION OF THE PATENT-IN-SUIT**

I, Matthew Stavish, do hereby declare and state as follows:

1.     I am an attorney in the law firm of Berenato, White & Stavish, counsel to Defendant Rally Manufacturing Inc. in the above-captioned matter.  I have personal knowledge of the matter set forth herein and, if called upon to do so, could and would competently testify thereto.

2.     Attached hereto as "Exhibit A" is a true and correct copy of this Court's September 10, 2007 Order in *Sorensen v. The Black & Decker Corp., et al.*, case no. 06-cv-1572 BTM (S.D. Cal. Sept. 10, 2007)(Dkt. No. 243).

3.     Attached hereto as "Exhibit B" is a true and correct copy of the United States Patent and Trademark Office's October 11, 2007 Order Granting/Denying Request for Reexamination of U.S. Patent No. 4,935,194.

4.     Attached hereto as "Exhibit C" is a true and correct copy of *Photoflex Prods. V. Circa 3 LLC*, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743 (N.D. Cal.

May 24, 2006).

     5.     Attached hereto as "Exhibit D" is a true and correct copy of the United States Patent and Trademark Office's "*Ex Parte* Reexamination Filing Data – June 30, 2006."

     6.     Attached hereto as "Exhibit E" is a true and correct copy of the notice letter mailed November 1, 2005 from Sorensen to Rally making the first accusation of infringement.

     I declare under penalty of perjury under the laws of the State of California and the United States of America, that I read this declaration and that it is true and correct.

     Executed this 11th day of March, 2008.

Matthew Stavish
Attorney for Defendant,
Rally Manufacturing, Inc.

# EXHIBIT

# A

1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORNIA

10

11   JENS ERIK SORENSEN, as Trustee of        CASE NO. 06cv1572 BTM (CAB)
     SORENSEN RESEARCH AND
12   DEVELOPMENT TRUST,                        **ORDER:**

13                              Plaintiff,     **(1) DENYING PLAINTIFF'S MOTION
                                               FOR RECONSIDERATION OF
14                                             DENIAL OF OBJECTIONS TO
                                               MAGISTRATE JUDGE'S ORDER OF
15       vs.                                   APRIL 9, 2007 AS MOOT [Doc.
                                               #163];**
16
                                               **(2) GRANTING DEFENDANTS'
17                                             MOTION FOR RECONSIDERATION
                                               OF THE COURT'S JUNE 20, 2007
18                                             ORDER RE BIFURCATION [Doc.
                                               #171];**
19
20   THE BLACK AND DECKER                      **(3) GRANTING IN PART AND
     CORPORATION, et al.                       DENYING IN PART DEFENDANTS'
21                                             MOTION TO STAY [Doc. #178];**

22                             Defendants.     **and**

23                                             **(4) DENYING PLAINTIFF'S MOTION
                                               FOR PARTIAL SUMMARY
24                                             JUDGMENT AS PREMATURE [Doc.
                                               #204]**

25   **I.    Motion for Reconsideration of Denial of Objections to Magistrate Judge's Order**

26          On April 9, 2007, Magistrate Judge Bencivengo issued an order in which she granted

27   in part and denied in part Plaintiff's motion to compel further responses to discovery.  In

28   accordance with 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), Plaintiff filed an

                                  **EXHIBIT A**                          06cv1572
                                       **05**

1  objection to that ruling, arguing that it was both clearly erroneous and contrary to law.  In an

2  order entered June 14, 2007, the Court overruled Plaintiff's objection without prejudice.  The

3  Court found that the Magistrate Judge's determinations regarding the Black & Decker

4  Defendants' waiver of the attorney-client privilege, and the applicability of Patent Local Rule

5  2.5(d), were neither clearly erroneous nor contrary to law, on the record before the Court.

6  However, the Court was unable to determine at that time whether, and to what extent, the

7  Black & Decker Defendants ("B&D") intended to rely upon the death of Dennis Dearing to

8  provide the requisite showing of prejudice in support of any laches and/or equitable estoppel

9  defenses.  Therefore, Plaintiff was granted leave to serve an interrogatory upon B&D, which

10  stated: "Set forth, in detail, all prejudice to Defendants that resulted from the death of Dennis

11  Dearing in regard to this case."  To the extent Plaintiff believed that B&D's response to the

12  interrogatory indicated that this Court's determination regarding waiver of the attorney-client

13  privilege was in error, it was invited to move for reconsideration of the decision at that time.

14      On July 11, 2007, B&D responded to Plaintiff's interrogatory setting forth the prejudice

15  that resulted from the death of its former in-house counsel Dennis Dearing.  The prejudice

16  identified included the inability to have Mr. Dearing testify regarding his communications in

17  the mid-1990s pertaining to Mr. Jens Ole Sorensen's claims of infringement of the '184

18  Patent.  These communications included discussions directly with Mr. Sorensen and his

19  representatives, as well as with John Schiech, Black & Decker's business manager

20  responsible for making all decisions concerning the matter.  B&D also indicated that it was

21  prejudiced because it could not present Mr. Dearing as a witness to defend against Plaintiff's

22  charge of willful infringement.

23      On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous

24  ruling on the basis of the new evidence presented in B&D's interrogatory response.  The

25  motion was calendared for hearing, without oral argument, on August 10, 2007.  However,

26  while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling

27  in light of B&D's interrogatory response.  On August 3, 2007, Judge Bencivengo issued her

28  "Order Following Discovery Conference on July 26, 2007" in which she ruled:

**EXHIBIT A**

**06**

06cv1572

1
2
3
4

> Since the defendant is affirmatively relying upon the death of Mr. Dearing to support its defense of laches, the plaintiff is entitled to review Mr. Dearing's files that still exist and reflect his personal thoughts and impressions, so plaintiff may respond to defendant's claim of lost evidence. Defendant was therefore ordered to produce any withheld documents reflecting Mr. Dearing's work product on this matter.

5 [Doc. #177 at ¶ 8.] Judge Bencivengo stayed production of Mr. Dearing's work product for

6 30 days in order to give B&D an opportunity to appeal the order. B&D has just taken that

7 opportunity and filed a motion for reconsideration on September 4, 2007 [Doc. #240]. B&D's

8 motion is calendared for hearing by this Court on November 2, 2007.

9      In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's

10 privileged documents, and the now-pending motion for reconsideration of that order, the

11 Court finds moot Plaintiff's motion for reconsideration of its previous order overruling

12 Plaintiff's objection to Judge Bencivengo's April 9, 2007 order. The Court finds that this

13 entire issue will be addressed, upon a complete and updated record that includes Judge

14 Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B&D's pending

15 motion for reconsideration. Accordingly, Plaintiff's motion is **DENIED** without prejudice as

16 moot.

17

18 **II.**    **Motion for Reconsideration of Bifurcation**

19      On June 13, 2007, the Court held a hearing on B&D's motion for summary judgment

20 of laches. The Court denied B&D's motion at that hearing and discussion then ensued over

21 the possibility of setting an expedited bench trial on B&D's equitable defenses of laches and

22 estoppel. At B&D's urging, the Court and the parties agreed to schedule this bench trial

23 beginning on December 17, 2007. In a June 20, 2007 written order confirming the Court's

24 decision from the June 13 hearing, the Court explained that the trial of equitable defenses

25 could be bifurcated from the rest of the trial proceedings relating to infringement. [Doc. #147

26 at 2-3.] Citing the Ninth Circuit case of Danjaq LLC v. Sony Corp., 263 F.3d 942 (9th Cir.

27 2001), the Court explained that, in deciding these equitable defenses, it would need to

28 determine whether there has been any showing of willful infringement on the part of

**EXHIBIT A**
**07**

1  Defendants that would act as a "counterdefense" to laches. The Court invited any party to

2  make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial

3  if they felt that the Court's determination of the willfulness issue presented a problem for any

4  subsequent jury trial proceedings.

5       On July 20, 2007, B&D accepted the Court's invitation and filed a motion for

6  reconsideration of bifurcation. [Doc. #171.] B&D explained that it had not appreciated that

7  the Court itself would need to make a finding on willfulness, without the aid of a jury, in any

8  bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its

9  full rights to a jury determination on willfulness, B&D withdrew its request for an expedited

10 bench trial on its equitable defenses.

11      Plaintiff has opposed B&D's motion for reconsideration arguing that there is no

12 authority establishing any right to a jury trial on willfulness and, to the extent such a right

13 exists, B&D has waived its rights by continually requesting that the Court schedule a short

14 bench trial on laches before proceeding with the rest of the action.

15      The Court finds that the right to a jury trial on willfulness exists in a patent action that

16 will be tried to a jury. See, e.g., Richardson v. Suzuki Motor Co., 886 F.2d 1226, 1250 (Fed.

17 Cir. 1989). Having considered the submissions of the parties and the record of these

18 proceedings, the Court does not find that B&D has knowingly waived its right to a jury trial

19 on willfulness. Moreover, the early bifurcated trial on equitable defenses was scheduled by

20 this Court in an effort to accommodate B&D's request for an early determination of laches,

21 which it argued, if found, would greatly expedite the conclusion of this matter. Having

22 recognized that a laches determination requires that this Court determine, before any jury

23 has considered the question, whether Defendants willfully infringed Plaintiff's patent, B&D

24 has withdrawn its request. The Court sees no reason to push ahead with a bifurcated trial

25 despite B&D's express wishes.

26      The Court's recognition of the practical ramifications of the intertwinement of

27 willfulness in any laches determination was the impetus for the Court's invitation to

28 reconsider in its June 20, 2007 order. Having considered B&D's submission, which was

**EXHIBIT A**

**08**

06cv1572

1  based upon the exact issues identified in this Court's own order, the Court hereby **GRANTS**

2  B&D's motion. The bifurcated bench trial on equitable defenses previously scheduled for

3  December 17, 2007 is hereby **VACATED**, along with all pretrial proceedings associated with

4  it, including the November 26, 2007 pretrial conference.

5

6  **III.    Motion to Stay Litigation Pending Reexamination**

7        On August 3, 2007, all Defendants jointly filed a motion for a stay of these

8  proceedings. Defendants' motion is based on B&D's pending request for reexamination of

9  Plaintiff's '184 Patent, which was filed with the U.S. Patent and Trademark Office ("PTO") on

10  July 30, 2007. The request for reexamination challenges, *inter alia*, all 5 claims of the '184

11  Patent that are asserted in the present litigation. The challenge is based on a number of

12  prior art references, almost all of which were apparently not considered by the PTO in the

13  prosecution of the '184 Patent.

14        Courts have inherent power to stay an action pending conclusion of PTO

15  reexamination proceedings. Ethicon, Inc. v. Quigg, 849 F.2d 1422,1426-27 (Fed. Cir. 1988).

16  The decision whether to grant or deny a motion to stay proceedings pending PTO

17  reexamination rests within the sound discretion of the court. See, e.g., Photoflex Products,

18  Inc. v. Circa 3 LLC, No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D. Cal.

19  May 24, 2006). There is a "liberal policy" in favor of granting motions to stay pending the

20  outcome of PTO reexamination proceedings. ASCII Corp. v. STD Entertainment USA, Inc.,

21  844 F. Supp. 1378, 1381 (N.D. Cal. 1994).

22        In determining whether to stay litigation pending reexamination by the PTO, courts

23  generally consider the following factors: (1) the stage of litigation, i.e., whether  discovery is

24  almost complete and whether a trial date has been set; (2) whether a stay would cause

25  undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether

26  a stay will simplify the issues in question and trial of the case. See, e.g., Xerox Corp. v.

27  3Com Corp., 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999).

28        The Court finds that this litigation has not proceeded so far that it would be unjust to

**EXHIBIT A**
**09**

06cv1572

1    stay the action.  Although this action was originally filed about a year ago, and the Court

2    recognizes that substantial amounts of discovery have already occurred, the more relevant

3    inquiry is whether discovery is nearing completion – it is not.[1]  For instance, Magistrate Judge

4    Bencivengo recently granted the parties permission to take an additional 10 depositions per

5    side.  [See Doc. #159 at 2.]  No deadline for the completion of fact discovery has even been

6    set.    Moreover,  the  parties  are  just  beginning  to  brief  the  preliminary  issue  of  claim

7    construction and, in accordance with the decision above to vacate the bifurcated bench trial

8    on equitable defenses, no trial date is currently set for any aspect of this case.  In addition,

9    while the Court has already considered two motions for summary judgment, it previously put

10   off consideration of two others until after claim construction, and Plaintiff has just filed a

11   substantial summary judgment motion aimed at piercing Black & Decker's corporate veil.

12   The Court anticipates that further summary judgment motions regarding infringement and

13   patent validity will be filed once claim construction is complete.  Thus, a substantial amount

14   of resources will be employed by all parties and the Court even in advance of any eventual

15   trial.  See, e.g., Broadcast Innovation, L.L.C. v. Charter Communications, Inc., No. 03-cv-

16   2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D. Colo. July 11, 2006) (granting

17   stay, in part, because of significant work remaining on motions for summary judgement, even

18   though trial date was less than three months away).

19        Plaintiff claims Defendants delayed filing their request for reexamination to gain a

20   tactical advantage over it.  He claims that Defendants were aware of the prior art that they

21   reference in their reexamination request over seven months ago, but purposely delayed so

22   that the '184 Patent would expire during the reexamination process, thereby precluding

23   Plaintiff from offering any amendments to the claims.  Defendants respond that there was no

24   intentional delay and that their decision to request reexamination was based, in part, on the

25   Supreme Court decision in KSR International Co. v. Teleflex Inc., 127 S. Ct. 1727 (2007),

26   which was only issued at the end of April.  The Court is not convinced that Defendants

27

28        [1] In reaching this determination, the Court has considered the surreply submitted by
     Plaintiff and, therefore, the pending ex parte request to file a surreply [Doc. #201] is
     **GRANTED.**

**EXHIBIT A**
**10**

1   employed any improper tactics in filing their request for reexamination.  While Plaintiff is
2   rightfully concerned that a reexamination in the twilight of his patent puts him at a distinct
3   disadvantage, he could have prevented this situation by filing suit many years ago, thereby
4   allowing sufficient time for any reexamination to occur before the patent expired.

5          Therefore, Plaintiff's cognizable claims of prejudice if a stay should be entered
6   basically boil down to his inconvenience in delaying final collection of any monetary award
7   of royalties, assuming he ultimately wins.  However, as the court recognized in Broadcast,
8   the prejudice factor "is best summarized by one question: *do the Plaintiffs have an adequate*
9   *remedy at law?*"  2006 U.S. Dist. LEXIS 46623, at *32.  Just as in Broadcast, the answer
10  here is that clearly Plaintiff does have an adequate remedy.  Defendants point out, and
11  Plaintiff has not disputed, that the '184 Patent will expire in February 2008 independent of
12  reexamination.  Given that a trial on the merits could not occur prior to that date, Plaintiff
13  would not have been granted any injunctive relief by this Court.  Therefore, his claim would
14  be restricted to past monetary damages, which, with the addition of prejudgment interest, are
15  fully capable of compensating Plaintiff.  Unfortunately, reexamination can be a drawn out
16  process, resulting in a significant delay in court proceedings.  Protracted delay is always a
17  risk inherent in granting a stay, yet courts continue to stay actions pending reexamination.
18  The general prejudice of having to wait for resolution is not a persuasive reason to deny the
19  motion for stay.  An average delay for reexamination of approximately 18-23 months is
20  especially inconsequential where Plaintiff himself waited as many as twelve years before
21  bringing the present litigation.  (See PTO Reexamination Statistics at Ex. B to Niro Decl.;
22  Doc. #180-3.)

23         In addition, the Federal Circuit has recently confirmed that the PTO would not be
24  bound in its reexamination by the determinations of this Court.  In re Trans Texas Holdings
25  Corp., 2006-1599 and 2006-1600, 2007 U.S. App. LEXIS 19909, at *14-19 (Fed. Cir. Aug.
26  22, 2007).  Because of this, the Court finds that not only is Plaintiff unlikely to be prejudiced
27  in these proceedings by a stay pending the PTO reexamination, but Defendants would
28  potentially be prejudiced by *failing* to enter a stay.  One court has explained this possibility

**EXHIBIT A**

**11**

1  accordingly:

2
> Not only could the Court and the PTO reach conflicting determinations, but
3  one possible scenario could result in irreparable harm to [Defendant]: if this
   Court finds that the [patent] is not invalid and that [Defendant] has infringed
4  it, and orders [Defendant] to pay damages to [Plaintiff] for such infringement,
   then [Defendant] would have no ability to recover those damages if at a later
5  date the PTO determined that the [] patent is invalid.

6  <u>Bausch & Lomb, Inc. v. Alcon Lab., Inc.</u>, 914 F. Supp. 951, 952 (W.D.N.Y. 1996). The Court

7  finds such a possibility to be, at a minimum, a highly undesirable outcome.

8    Finally, the Court finds that the stay will result in the simplification of issues in this

9  case. As explained by the Federal Circuit, "[o]ne purpose of the reexamination procedure

10  is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to

11  facilitate trial of that issue by providing the district court with the expert view of the PTO

12  (when a claim survives the reexamination proceeding)." <u>Gould v. Control Laser Corp.</u>, 705

13  F.2d 1340, 1342 (Fed. Cir. 1983), <u>cert. denied</u>, 464 U.S. 935 (1983). The <u>Broadcast</u> court,

14  elaborating on this point, explained:

15    Shifting the patent validity issue to the PTO has many advantages, including:

16    1. All prior art presented to the Court will have been first considered by the
   PTO, with its particular expertise.
17
18    2. Many discovery problems relating to prior art can be alleviated by the PTO
   examination.

19    3. In those cases resulting in effective invalidity of the patent, the suit will
   likely be dismissed.
20
21    4. The outcome of the reexamination may encourage a settlement without
   the further use of the Court.

22    5. The record of reexamination would likely be entered at trial, thereby
   reducing the complexity and length of the litigation.
23
24    6. Issues, defenses, and evidence will be more easily limited in final pretrial
   conferences after a reexamination.

25    7. The cost will likely be reduced both for the parties and the Court.

26  2006 U.S. Dist. LEXIS 46623, at *9-10 (quoting <u>Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.</u>,

27  3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987)).

28    The Court believes that it will benefit from the PTO's evaluation of how the previously

**EXHIBIT A**
**12**

06cv1572

1  unconsidered prior art references impact the claims of the patent-in-suit. The PTO's expert

2  evaluation is likely to be of assistance not only as to the issues of validity, but its

3  understanding of the claims is also likely to aid this Court in the preliminary process of claim

4  construction.

5       The Court finds that, especially in this case, the reexamination process has the

6  potential to significantly narrow the issues for trial because of the impending expiration of the

7  '184 Patent. While the parties have argued at length about exactly how this additional

8  variable affects the calculation of the likely outcome of reexamination, the Court need not

9  resolve this dispute to reach the proper conclusion. It is enough to note that when

10  reexamination is requested by a third party, as in this case, all claims are confirmed only 29%

11  of the time. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.) Since

12  no amendments can be offered to an expired patent, there is obviously a significant likelihood

13  that the validity of the claims at issue in this action will be affected by the reexamination

14  process.[2]

15       In addition, the Court expects that the reexamination process will not only aid the

16  Court in these proceedings, but should also redound to the benefit of the parties, both

17  Defendants and Plaintiff. As the Broadcast court explained in its discussion of the possibility

18  of prejudice from entering a stay:

19       If the PTO does not invalidate or otherwise alter the claims of the [] patent,
         the Plaintiffs' legal remedy remains unaffected . . . . Moreover, if the claims
20       are narrowed, both sets of parties will have benefitted by avoiding the
         needless waste of resources before this Court, and again, the Plaintiffs will
21       be able to pursue their claim for money damages at trial. Finally, if the claims
         are strengthened, the Plaintiffs' position will be as well, and their likelihood
22       of monetary damages will increase. See, e.g., Motson, 2005 U.S. Dist.
         LEXIS, 2005 WL 3465664 at *1 ("[I]f the PTO upholds the validity of plaintiff's
23       patent, 'the plaintiff's rights will only be strengthened, as the challenger's
         burden of proof becomes more difficult to sustain.'") (quoting Pegasus Dev.
24       Corp., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at *2).

25

26       [2] Plaintiff has argued that the PTO is unlikely to grant reexamination precisely because
    the '184 Patent will expire soon. However, Plaintiff failed to produce any evidence to support
27  this contention. Moreover, even if Plaintiff is correct, and the PTO fails to grant
    reexamination (a decision which should issue no later than October 30, 2007), this Court
28  would immediately lift the stay and these proceedings would continue – a relatively
    insignificant 2-month delay being all that would result.

**EXHIBIT A**

13

1  2006 U.S. Dist. LEXIS 46623, at *32-33.  Accordingly, the Court finds that a stay is

2  appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues

3  before this Court.

4          Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and

5  **DENIED IN PART**.  With the exception of two pending motions, all proceedings are hereby

6  stayed pending the PTO's reexamination of the '184 Patent.  The Court will continue to hear

7  Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation

8  [Doc. #182], which is calendared for hearing on October 12, 2007.  As was discussed above

9  in Section I, the Court will also continue to hear B&D's pending motion for reconsideration

10  of Magistrate Judge Bencivengo's August 3, 2007 order regarding production of Dennis

11  Dearing's attorney work product [Doc. #240], which is calendared for hearing on November

12  2, 2007.  The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the

13  claim construction hearing previously set for November 19, 2007.  All hearing dates will be

14  reset, to the extent appropriate, once the stay of these proceedings has been lifted.

15          Defendants are ordered to file a notice informing the Court of the PTO's decision on

16  the pending application for reexamination within 10 days of receipt of such decision.  If the

17  PTO declines B&D's request to reexamine the '184 Patent, the Court will immediately lift the

18  stay and recalendar all vacated hearing dates.  If, however, the PTO approves

19  reexamination, this stay will remain in place pending some resolution of those proceedings.

20  During the pendency of the reexamination, Defendants will be required to file a notice every

21  6 months apprising the Court of any change in the status of those proceedings.

22

23  **IV.**    **Motion for Partial Summary Judgment**

24          On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the

25  corporate veils of the Black & Decker Defendants, or in the alternative, holding them to be

26  a single enterprise for purposes of patent infringement liability. [Doc. #204.]  The motion is

27  presently calendared for hearing on October 26, 2007.  In light of the Court's entry of a stay

28  of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's

**EXHIBIT A**
14

06cv1572

motion to be premature.  Accordingly, the Court hereby **DENIES** Plaintiff's motion without prejudice.[3] As the Court is aware of the substantial volume of Plaintiff's motion, he is invited to refile this motion once the stay has been lifted by simply filing a short notice of motion which incorporates by reference his earlier filing.

**IT IS SO ORDERED.**

DATED:  September 10, 2007

Honorable Barry Ted Moskowitz
United States District Judge

---

[3] Plaintiff's pending motion to file confidential documents under seal in support of the motion for partial summary judgment [Doc. #204-5] is also **DENIED** as moot.

**EXHIBIT A**
**15**

06cv1572

# EXHIBIT
# B

 **UNITED STATES PATENT AND TRADEMARK OFFICE**

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,775 | 07/30/2007 | 4935184 | X32441 | 9943 |

22653     7590     10/11/2007

EDWARD W CALLAN
NO. 705 PMB 452
3830 VALLEY CENTRE DRIVE
SAN DIEGO, CA  92130

| EXAMINER |
|---|
|   |

| ART UNIT | PAPER NUMBER |
|---|---|
|   |   |

DATE MAILED: 10/11/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

**EXHIBIT B**
**16**

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

10/11/07

Arnold Turk, Esq.

Greenblum & Bernstein P. L. C.

1950 Roland Clarke Place

Reston VA   20191

## *EX PARTE*  REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008775
PATENT NO.   4,935,184
ART UNIT 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

**EXHIBIT B**

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,775 | Patent Under Reexamination 4935184 | |
|---|---|---|---|
| | Examiner Alan Diamond | Art Unit 3991 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>30 July 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892,    b)☒ PTO/SB/08,    c)☐ Other: _____

1. ☒    The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐    The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)). **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181 ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

   a) ☐ by Treasury check or,

   b) ☐ by credit to Deposit Account No. _____,  or

   c) ☐ by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Alan  Diamond
Primary Examiner
Art Unit: 3991

cc:Requester ( if third party requester )
U.S. Patent and Trademark Office
PTOL-471 (Rev. 08-06)               Office Action In *Ex Parte* Reexamination               Part of Paper No. 20071003

**EXHIBIT B**
**18**

Application/Control Number: 90/008,775                                    Page 2
Art Unit: 3991

### *Decision on Reexamination Request*

1.    A substantial new question of patentability affecting claims 1, 2, 4, and 6-10 of

United States Patent Number 4,935,184 to Sorensen, is raised by the request for *ex*

*parte* reexamination.  The request for reexamination is Third Party requested.

2.    Since requestor did not request reexamination of claims 3 and 5 and did not

assert the existence of a substantial new question of patentability (SNQ) for such claims

(see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), such claims will not be

reexamined.  This matter was squarely addressed in *Sony Computer Entertainment*

*America Inc., et al v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22,

2006), Slip Copy, 2006 WL 1472462.  The District Court upheld the Office's discretion to

not reexamine claims in a reexamination proceeding other than those claims for which

reexamination had specifically been requested.  The Court stated:

> "To be sure, a party may seek, and the PTO may grant, ...review of each and every
> claim of a patent. Moreover, while the PTO in its discretion may review claims for
> which ... review was not requested, nothing in the statute compels it to do so. To
> ensure that the PTO considers a claim for ... review, ...requires that the party
> seeking reexamination demonstrate why the PTO should reexamine each and every
> claim for which it seeks review. Here, it is undisputed that **Sony** did not seek review
> of every claim under the '213 and '333 patents. Accordingly, **Sony** cannot now
> claim that the PTO wrongly failed to reexamine claims for which **Sony** never
> requested review, and its argument that AIPA compels a contrary result is
> unpersuasive."

### *Extension of Time*

3.    Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that

**EXHIBIT B**
19

Application/Control Number: 90/008,775                                    Page 3
Art Unit: 3991

*ex parte* reexamination proceedings "will be conducted with special dispatch" (37

CFR 1.550(a)).  Extensions of time in *ex parte* reexamination proceedings are provided

for in 37 CFR 1.550(c).


### Substantial New Question of Patentability (SNQ)

4.      The presence or absence of a "substantial new question of patentability"

determines whether or not reexamination is ordered.

        For a "substantial new question of patentability" to be present, it is only

necessary that :

        A) the prior art patents and/or printed publications raise a substantial new

question of patentability regarding at least one claim, i.e., the teaching of the (prior art)

patents and printed publications is such that a reasonable examiner would consider the

teaching to be important in deciding whether or not the claim is patentable; and

        B) the same question of patentability as to the claim has not been decided by the

Office in a previous examination of the patent or in a final holding of invalidity by the

Federal Courts in a decision on the merits involving the claim.

        A SNQ may be based solely on old art where the old art is being

presented/viewed in a new light, or in a different way, as compared with its use in the

earlier concluded examination(s), in view of a material new argument or interpretation in

the request.  (MPEP 2242).


**EXHIBIT B**
**20**

Application/Control Number: 90/008,775                                    Page 4
Art Unit: 3991

### *Request*

5.      **The request indicates the Requestor considers that Moscicki (U.S. Patent 3,178,497) raises a substantial new question of patentability with respect to claims 1, 4, 6-8 and 10 of Sorensen.**

It is agreed that consideration of Moscicki raises a substantial new question of patentability as to claims 1, 4, 6-8 and 10 of Sorensen.  Page 28, line 14 though page 32, seventh line from the bottom; page 56 at the start of section 8 through page 58, line 5; page 83, line 13 through page 86, line 9; page 86, line 22 through page 87, line 22; page 94, lines 1-19; page 98, line 6 through page 99, line 2; and page 107, line 18 through page 108, line 11, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Moscicki that was not present in the prosecution of the application which became the Sorensen patent.  There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 4, 6-8 and 10 of Sorensen were patentable. Accordingly, Moscicki raises a substantial new question of patentability as to claims 1, 4, 6-8 and 10, which question has not been decided in a previous examination of the Sorensen patent.

6.      **The request indicates the Requestor considers that Seima (GB 2004494 A) raises a substantial new question of patentability with respect to claims 1, 2 and 6-10 of Sorensen.**

Application/Control Number: 90/008,775                                    Page 5
Art Unit: 3991

It is agreed that consideration of Seima raises a substantial new question of patentability as to claims 1, 2 and 6-10 of Sorensen. Page 32, sixth line from the bottom, through the end of page 36; page 60, fifth line from the bottom, through page 62, line 3; page 80, line 10 through page 83, line 12; page 88, line 13 through page 89, line 15; page 95, line 13 through page 96, line 9; page 99, line 15 through page 100, line 11; page 104, line 1 through page 107, line 4; and page 109, lines 1-20, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Seima that was not present in the prosecution of the application which became the Sorensen patent. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 2 and 6-10 of Sorensen were patentable. Accordingly, Seima raises a substantial new question of patentability as to claims 1, 2 and 6-10, which question has not been decided in a previous examination of the Sorensen patent.

7.     **The request indicates the Requestor considers that Gits (U.S. Patent 2,863,241) raises a substantial new question of patentability with respect to claim 1 of Sorensen.**

It is agreed that consideration of Gits raises a substantial new question of patentability as to claim 1 of Sorensen. Page 37, line 1 through the end of section 3 on page 40, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Gits that was not present in the prosecution of the application which became the Sorensen patent. There is a substantial likelihood

**EXHIBIT B**
22

Application/Control Number: 90/008,775                                    Page 6
Art Unit: 3991

that a reasonable examiner would consider this teaching important in deciding whether

or not claim 1 of Sorensen was patentable. Accordingly, Gits raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.


8.      **The request indicates the Requestor considers that Shiho *et al* (U.S. Patent**

**4,440,820, hereinafter "Shiho") raises a substantial new question of patentability**

**with respect to claims 1, 6-8 and 10 of Sorensen.**

It is agreed that consideration of Shiho raises a substantial new question of

patentability as to claims 1, 6-8 and 10 of Sorensen. The beginning of section 4 on

page 40 through the end of section 4 on page 44; page 90, lines 4-20; page 96, line 23

through page 97, line 6; page 101, lines 1-11; and page 110, lines 14-23, of the request

for reexamination are hereby incorporated by reference for their explanation of the

teaching provided in Shiho that was not present in the prosecution of the application

which became the Sorensen patent. There is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not claims 1, 6-

8 and 10 of Sorensen were patentable. Accordingly, Shiho raises a substantial new

question of patentability as to claims 1, 6-8 and 10, which question has not been

decided in a previous examination of the Sorensen patent.


**EXHIBIT B**
23

Application/Control Number: 90/008,775                                    Page 7
Art Unit: 3991

9.    The request indicates the Requestor considers that JP 60-119520 U to
Toyota Motor (hereinafter "Toyota") raises a substantial new question of
patentability with respect to claim 1 of Sorensen.

It is agreed that consideration of Toyota raises a substantial new question of
patentability as to claim 1 of Sorensen.  The beginning of section 5 on page 44 through
the end of section 5 on page 48; and page 70, line 1 through page 71, line 8, of the
request for reexamination are hereby incorporated by reference for their explanation of
the teaching provided in Toyota that was not present in the prosecution of the
application which became the Sorensen patent.  There is a substantial likelihood that a
reasonable examiner would consider this teaching important in deciding whether or not
claim 1 of Sorensen was patentable.  Accordingly, Toyota raises a substantial new
question of patentability as to claim 1, which question has not been decided in a
previous examination of the Sorensen patent.


10.    The request indicates the Requestor considers that German Published
Patent Application No. 1850999 to Echterholter raises a substantial new question
of patentability with respect to claim 1 of Sorensen.

It is agreed that consideration of Echterholter raises a substantial new question
of patentability as to claim 1 of Sorensen.  The beginning of section 6 on page 48
through page 53, line 6; and page 73, line 10 through page 74, line 17, of the request
for reexamination are hereby incorporated by reference for their explanation of the
teaching provided in Echterholter that was not present in the prosecution of the

**EXHIBIT B**
24

Application/Control Number: 90/008,775                                Page 8
Art Unit: 3991

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 of Sorensen was patentable.  Accordingly, Echterholter raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.


11.    **The request indicates the Requestor considers that Wright, "New vigor for**

**two-shot molding automation... versatility... ingenuity," Modern Plastics, May**

**1986, pp. 79-83, (hereinafter "Modern Plastics") raises a substantial new question**

**of patentability with respect to claims 1, 6 and 8 of Sorensen.**

It is agreed that consideration of Modern Plastics raises a substantial new

question of patentability as to claims 1, 6 and 8 of Sorensen.  Page 53, line 7 through

the end of section 7 on page 56; page 77, line 1 through page 78, line 8; page 92, line 9

through page 93, line 12; and page 102, line 16 through page 103, line 11, of the

request for reexamination are hereby incorporated by reference for their explanation of

the teaching provided in Modern Plastics that was not present in the prosecution of the

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claims 1, 6 and 8 of Sorensen were patentable.  Accordingly, Modern Plastics raises a

substantial new question of patentability as to claims 1, 6 and 8, which question has not

been decided in a previous examination of the Sorensen patent.


**EXHIBIT B**
**25**

Application/Control Number: 90/008,775                    Page 9
Art Unit: 3991

12.     The request indicates the Requestor considers that Moscicki in view of Echterholter and further in view of Modern Plastics raises a substantial new question of patentability with respect to claims 1, 4, 6-8 and 10 of Sorensen.

It is agreed that consideration of Moscicki in view of Echterholter and further in view of Modern Plastics raises a substantial new question of patentability as to claims 1, 4, 6-8 and 10 of Sorensen.  Page 58, line 6 through the end of section 9 on page 60; page 86, lines 10-21; page 88, lines 1-12; page 95, lines 1-12; page 99, lines 3-14; and page 108, lines 12-23, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Moscicki, Echterholter and Modern Plastics that was not present in the prosecution of the application which became the Sorensen patent.  There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claims 1, 4, 6-8 and 10 of Sorensen were patentable.  Accordingly, Moscicki in view of Echterholter and further in view of Modern Plastics raises a substantial new question of patentability as to claims 1, 4, 6-8 and 10, which question has not been decided in a previous examination of the Sorensen patent.


13.     The request indicates the Requestor considers that Seima in view of Echterholter and further in view of Modern Plastics raises a substantial new question of patentability with respect to claims 1 and 6-10 of Sorensen.

It is agreed that consideration of Seima in view of Echterholter and further in view of Modern Plastics raises a substantial new question of patentability as to claims 1 and

**EXHIBIT B**
26

Application/Control Number: 90/008,775                                    Page 10
Art Unit: 3991

6-10 of Sorensen.  Page 62, line 4 through page 64, line 3; page 89, line 16 through

page 90, line 3; page 96, lines 10-22; page 100, lines 12-24; page 107, lines 5-17; and

page 110, lines 1-13, of the request for reexamination are hereby incorporated by

reference for their explanation of the teaching provided in Seima, Echterholter and

Modern Plastics that was not present in the prosecution of the application which

became the Sorensen patent.  There is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not claims 1

and 6-10 of Sorensen were patentable.  Accordingly, Seima in view of Echterholter and

further in view of Modern Plastics raises a substantial new question of patentability as to

claims 1 and 6-10, which question has not been decided in a previous examination of

the Sorensen patent.


14.     At page 64, line 4 through page 67, line 18; page 90, line 21 through page

91, line 13; page 97, lines 7-16; and page 101, lines 12-22, the request indicates

the Requestor considers that Schad (U.S. Patent 4,422,995) raises a substantial

new question of patentability with respect to claims 1 and 6-8 of Sorensen.

        Schad **does not** raise a substantial new question of patentability with respect to

claims 1 and 6-8 of Sorensen.  In the prosecution of application Serial No. 07/386,012,

which matured into the Sorensen patent, Schad was used to reject all the claims (1-10)

under 35 USC 103(a).  The rejection over Schad was overcome and the Sorensen

patent was allowed after applicant amended steps (h) and (i) of claim 1 so as to recite

the injection of first/second plastic material until it reaches the portion of the first/second

**EXHIBIT B**

Application/Control Number: 90/008,775                                   Page 11
Art Unit: 3991

mold cavity that defines the rim of the product. Third party requestor even admits at

page 66, lines 16-18, of the request that "Schad does not specifically disclose a first

injection material which 'reaches the portion of the mold cavity that defines the rim of

the product.'" Third party requestor cites *KSR int'l Co. v. Teleflex Inc.* and design

choice for the obviousness of modifying Schad so that a first injection material reaches

the portion of the mold cavity that defines the rim of the product (Request, pages 66-

67). Third party requestor notes that "design choice" with respect to product shape was

considered by the Examiner in the rejection over Schad that was mailed 10/11/1988

during prosecution of the 07/386,012 application (see page 67 of the Request).

Consideration of Shad in view of *KSR int'l Co. v. Teleflex Inc.* or "design choice" does

not provide any new teaching with respect to Schad as compared with its use in the

prosecution of the Sorensen patent. Accordingly, Schad is not being viewed in a new

light compared with its use in the prosecution of the Sorensen patent, and thus, does

not raise a substantial new question of patentability with respect to claims 1 and 6-8 of

Sorensen.


15.    **The request indicates the Requestor considers that Schad in view of
Moscicki and further in view of Seima and Shiho raises a substantial new
question of patentability with respect to claims 1 and 6-8 of Sorensen.**

It is agreed that consideration of Schad in view of Moscicki and further in view of

Seima and Shiho raises a substantial new question of patentability as to claims 1 and 6-

8 of Sorensen. Page 67, lines 19 through the last line on page 69; page 91, line 14


**EXHIBIT B**
28

Application/Control Number: 90/008,775                                      Page 12
Art Unit: 3991

through page 92, line 8; page 97, line 17 through page 98, line 5; and page 102, lines 1-

15, of the request for reexamination are hereby incorporated by reference for their

explanation of the teaching provided in Schad, Moscicki, Seima and Shiho that was not

present in the prosecution of the application which became the Sorensen patent. There

is a substantial likelihood that a reasonable examiner would consider this teaching

important in deciding whether or not claims 1 and 6-8 of Sorensen were patentable.

Accordingly, Schad in view of Moscicki and further in view of Seima and Shiho raises a

substantial new question of patentability as to claims 1 and 6-8, which question has not

been decided in a previous examination of the Sorensen patent.


16.    **The request indicates the Requestor considers that Toyota in view of**
**Moscicki and further in view of Seima and Shiho raises a substantial new**
**question of patentability with respect to claim 1 of Sorensen.**

It is agreed that consideration of Toyota in view of Moscicki and further in view of

Seima and Shiho raises a substantial new question of patentability as to claim 1 of

Sorensen. Page 71, line 9 through page 73, line 9, of the request for reexamination are

hereby incorporated by reference for their explanation of the teaching provided in

Toyota, Moscicki, Seima and Shiho that was not present in the prosecution of the

application which became the Sorensen patent. There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 Sorensen was patentable. Accordingly, Toyota in view of Moscicki and further

in view of Seima and Shiho raises a substantial new question of patentability as to claim


**EXHIBIT B**

Application/Control Number: 90/008,775                                        Page 13
Art Unit: 3991

1, which question has not been decided in a previous examination of the Sorensen
patent.


17.    **The request indicates the Requestor considers that Echterholter in view of
Moscicki and further in view of Seima and Shiho raises a substantial new
question of patentability with respect to claim 1 of Sorensen.**

       It is agreed that consideration of Echterholter in view of Moscicki and further in
view of Seima and Shiho raises a substantial new question of patentability as to claim 1
of Sorensen. Page 74, line 18 through the last line on page 76, of the request for
reexamination are hereby incorporated by reference for their explanation of the teaching
provided in Echterholter, Moscicki, Seima and Shiho that was not present in the
prosecution of the application which became the Sorensen patent. There is a
substantial likelihood that a reasonable examiner would consider this teaching important
in deciding whether or not claim 1 Sorensen was patentable. Accordingly, Echterholter
in view of Moscicki and further in view of Seima and Shiho raises a substantial new
question of patentability as to claim 1, which question has not been decided in a
previous examination of the Sorensen patent.


18.    **The request indicates the Requestor considers that Modern Plastics in view
of Moscicki and further in view of Seima and Shiho raises a substantial new
question of patentability with respect to claims 1, 6 and 8 of Sorensen.**


**EXHIBIT B**
**30**

Application/Control Number: 90/008,775                                        Page 14
Art Unit: 3991

It is agreed that consideration of Modern Plastics in view of Moscicki and further

in view of Seima and Shiho raises a substantial new question of patentability as to

claims 1, 6 and 8 of Sorensen.  Page 78, line 9 through page 80, line 9; page 93, lines

13-25; and page 103, lines 12-24, of the request for reexamination are hereby

incorporated by reference for their explanation of the teaching provided in Modern

Plastics, Moscicki, Seima and Shiho that was not present in the prosecution of the

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claims 1, 6 and 8 of Sorensen were patentable.  Accordingly, Modern Plastics in view of

Moscicki and further in view of Seima and Shiho raises a substantial new question of

patentability as to claims 1, 6 and 8, which question has not been decided in a previous

examination of the Sorensen patent.

### Duty to Disclose

19.     The patent owner is reminded of the continuing responsibility under 37 CFR

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving Patent No. 4,935,184 throughout the course of this reexamination

proceeding.  The third party requestor is also reminded of the ability to similarly apprise

the Office of any such activity or proceeding throughout the course of this reexamination

proceeding.  See MPEP §§ 2207, 2282 and 2286.

**EXHIBIT B**
**31**

Application/Control Number: 90/008,775          Page 15
Art Unit: 3991

### *Correspondence*

14.    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Alan Diamond whose telephone number is (571) 272-

1338. The examiner can normally be reached on Monday through Friday from 5:30

a.m. to 2:00 p.m.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Deborah Jones can be reached on (571) 272-1535.

Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system. Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

### *Notice Re Patent Owner's Correspondence Address*

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte*
reexamination or an *inter partes* reexamination is designated as the correspondence
address of the patent.

*Revisions and Technical Corrections Affecting Requirements for Ex Parte
and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not
having the same correspondence address as that of the patent is, by way of this**

### EXHIBIT B

Application/Control Number: 90/008,775                                      Page 16
Art Unit: 3991

revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of
the effective date.

This change is effective for any reexamination proceeding which is pending before the
Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any
reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct
communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for
the present proceeding is different from the correspondence address of the patent, it is
strongly encouraged that the patent owner affirmatively file a Notification of Change of
Correspondence Address in the reexamination proceeding and/or the patent (depending
on which address patent owner desires), to conform the address of the proceeding with
that of the patent and to clarify the record as to which address should be used for
correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice            (571) 272-7703
Central Reexam Unit (CRU)                       (571) 272-7705
Reexamination Facsimile Transmission No.        (571) 273-9900

Please mail any communications to:
      Attn: Mail Stop "Ex Parte Reexam"
      Central Reexamination Unit
      Commissioner for Patents
      P. O. Box 1450
      Alexandria VA   22313-1450

Please FAX any communications to:
      (571) 273-9900
      Central Reexamination Unit

**EXHIBIT B**
**33**

Application/Control Number: 90/008,775

Page 17

Art Unit: 3991

Please hand-deliver any communications to:
Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

Signed:

Alan Diamond
Primary Examiner
Central Reexamination Unit
Art Unit 3991
(571) 272-1338

/Jerry D. Johnson/
Primary Examiner
Art Unit 3991

STEPHEN J. STEIN
CRU EXAMINER - AU 3991

**EXHIBIT B**
34

# EXHIBIT
# C

LEXSEE 2006 U.S. DIST. LEXIS 37743

**PHOTOFLEX PRODUCTS, INC., Plaintiff, v. CIRCA 3 LLC dba AMVONA.COM, Defendant.**

**No. C 04-03715 JSW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2006 U.S. Dist. LEXIS 37743*

**May 24, 2006, Decided**
**May 24, 2006, Filed**

**COUNSEL:** [*1] Photoflex Products, Inc., Plaintiff: Alfredo A. Bismonte, Bobby T. Shih, Daniel S. Mount, Mount & Stoelker, San Jose, CA; Michael J. Hughes, Intellectual Property Law Offices, Campbell, Ca.

Circa 3 LLC, also known as, Amvona.com, Defendant: Warren J. Krauss, Detert Moran & Arnold, San Francisco, CA; James Yuanxin Li, Sedgwick Detert Moran & Arnold, San Francisco, CA.

**JUDGES:** JEFFREY S. WHITE, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** JEFFREY S. WHITE

**OPINION**

**ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION TO STAY LITIGATION**

Now before the Court is Defendant Circa 3 LLC dba Amvona.com's ("Amvona") motion to stay litigation during the pendency of reexamination of United States Patent 6,076,935 (the "'935 Patent"). The Court finds that this matter is appropriate for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for May 26, 2006 is HEREBY VACATED. Having considered the parties' pleadings and the relevant legal authority, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendant's motion to stay litigation. In this action, Plaintiff brings claims for copyright and patent infringement, as well we claims of unfair competition and [*2] false designation of origin, related to the manufacture and marketing of high quality photographic equipment. Count two of the second amended complaint for patent infringement is STAYED, but Counts one, three and four for copyright infringement, false designation of origin and unfair competition are NOT STAYED.

**ANALYSIS**

**A. Legal Standards Applicable to a Motion to Stay Proceedings Pending Reexamination.**

The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of *section 301.*" *35 U.S.C. § 302.* The PTO must "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request. . . ." *35 U.S.C. § 303(a).* The reexamination statute further provides that "[a]ll reexamination proceedings . . . including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch." *35 U.S.C. § 305.*

The determination of whether to grant a stay pending the [*3] outcome of the PTO's reexamination is soundly within the Court's discretion. *See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc., 70 U.S.P.Q. 2d 1319, 1320 (N.D. Ill. 2004)* (citing *Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed. Cir. 1983)).* When ruling on such a stay, courts consider several factors: (1) the stage of the

**EXHIBIT C**
35

litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. *Id.; Methode Elecs., Inc. v. Infineon Techs. Corp., No. 99-21142, 2000 U.S. Dist. LEXIS 20689, at *5-6 (N.D. Cal. Aug. 7, 2000).* There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." *ASCII Corp. v. STD Entertainment, 844 F. Supp. 1378, 1381 (N.D. Cal. 1994).*

## B. Early Stage of Litigation Favors a Stay of the Patent Claim.

Here, the early [*4] stage of this litigation weighs in favor of granting a stay of the patent infringement portion of the case. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q. 2d 2022, 2023 (N.D. Cal. 1995)* (holding that the absence of "significant discovery" or "substantial expense and time . . . invested" in the litigation weighed in favor of staying the litigation); *see also ASCII Corp., 844 F. Supp. at 1381* (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has just begun. Amvona has served 14 interrogatories and 29 requests for production of documents and Photoflex has served 16 interrogatories and 5 requests for production of documents. No depositions have been taken or scheduled. (*See* Declaration of James Yuanxin Li ("Li Decl."), P 2.) Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics, 33 U.S.P.Q. 2d at 2023.*

## C. A Stay Will Not Unduly Prejudice Plaintiff.

[*5] In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7.* Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* The delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *Pegasus Dev. Corp. v. DirecTV, Inc., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073, at *2 (D. Del. May 14, 2003).*

Courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. *Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7.* This is not a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc., 983 F. Supp. 1126, 1128 (S.D. Tex. 1997)* (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). There has been no showing of dilatory motive or tactics.

Accordingly, te Court finds that a stay of the patent claim [*6] will not unduly prejudice Plaintiff, and thus this factor also weighs in favor of granting a stay.

## D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both the Parties and the Court.

Because the patent-in-suit is currently being reexamined, the Court finds that the patent infringement case should be stayed during the pendency of the reexamination. The Court finds that such a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

However, in determining whether to grant a stay of an entire case, courts consider whether there would remain, after the PTO reexamination, issues "completely unrelated to patent infringement" for which a stay would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc., 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005).* If such matters "would continue to be an issue . . . a stay would not preserve many resources." *Id.*

Here, in addition to the patent infringement claim, Plaintiff brings claims for copyright infringement, false designation of origin [*7] and unfair competition. Simply arguing these claims have no merit, Defendant has failed to address whether there are significant overlapping issues between the patent claim and these other claims whereby a stay of the other claims would reduce the burden of litigation on both the parties and the Court. Thus, the Court finds that Defendant has made no showing upon which the Court could find a stay of those separate causes of action would be justified.

Therefore, having considered the factors relevant in

**EXHIBIT C**

36

determining whether to grant a stay pending reexamination, the Court hereby GRANTS Amvona's motion to stay the patent infringement portion of this case but DENIES the motion as to the remaining claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Amvona's motion to stay. Count two for patent infringement is stayed from the date of this Order until further notice with the exception of activities relating to or arising out of the judicial settlement conference currently schedule before Magistrate Judge Wayne D. Brazil on May 25, 2006. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination

[*8] proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the '935 Patent, until the stay of the patent infringement claim is lifted.

The Court DENIES the request for a stay as to counts one, three and four.

**IT IS SO ORDERED.**

Dated: May 24, 2006

JEFFREY S. WHITE

UNITED STATES DISTRICT JUDGE

# EXHIBIT C
# 37

# EXHIBIT
# D

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.go

*Ex Parte* Reexamination Filing Data  - June 30, 2006

1.  Total requests filed since start of ex parte reexam on 07/01/81 .................................... 8084

    a.  By patent owner                             3313    41%
    b.  By other member of public              4606    57%
    c.  By order of Commissioner              165     2%

2.  Number of filings by discipline

    a.  Chemical Operation                    2496    31%
    b.  Electrical Operation                   2608    32%
    c.  Mechanical Operation              2980    37%

3.  Annual Ex Parte Reexam Filings

| Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. | Fiscal Yr. | No. |
|---|---|---|---|---|---|---|---|
| 1981 | 78 (3 mos.) | 1989 | 243 | 1997 | 376 | 2005 | 524 |
| 1982 | 187 | 1990 | 297 | 1998 | 350 | 2006 | 340 |
| 1983 | 186 | 1991 | 307 | 1999 | 385 | | |
| 1984 | 189 | 1992 | 392 | 2000 | 318 | | |
| 1985 | 230 | 1993 | 359 | 2001 | 296 | | |
| 1986 | 232 | 1994 | 379 | 2002 | 272 | | |
| 1987 | 240 | 1995 | 392 | 2003 | 392 | | |
| 1988 | 268 | 1996 | 418 | 2004 | 441 | | |

4.  Number known to be in litigation ................................................................... 1895    23%

5.  Determinations on requests ...................................................................... 7852

    a.  No. granted ............................................................... 7160 ................ 91%

        (1)  By examiner                     7054
        (2)  By Director (on petition)          106

    b.  No. denied .......................................................... 692 ................ 9%

        (1)  By examiner                     657
        (2)  Order vacated                 35

**EXHIBIT D**
**38**

6.  Total examiner denials (includes denials reversed by Director) ........................763

    a.  Patent owner requester                          430          56%
    b.  Third party requester                           333          44%


7.  Overall reexamination pendency  (Filing date to certificate issue date)

    a.  Average pendency                              22.8  (mos.)
    b.  Median pendency                               17.6  (mos.)


8.  Reexam certificate claim analysis:

| | Owner Requester | 3rd Party Requester | Comm'r Initiated | Overall |
|---|---|---|---|---|
| a.  All claims confirmed | 23% | 29% | 13% | 26% |
| b.  All claims cancelled | 7% | 12% | 19% | 10% |
| c.  Claims changes | 70% | 59% | 68% | 64% |


9.  Total ex parte reexamination certificates issued (1981 - present) ...................5433

    a.  Certificates with all claims confirmed        1410         26%
    b.  Certificates with all claims canceled           554         10%
    c.  Certificates with claims changes               3469         64%


10. Reexam claim analysis - requester is patent owner or 3rd party; or Comm'r initiated.

    a.  Certificates _ PATENT OWNER REQUESTER ................................2360

        (1)  All claims confirmed                     543          23%
        (2)  All claims canceled                      174           7%
        (3)  Claim changes                           1643          70%

    b.  Certificates _ 3rd PARTY REQUESTER ....................................2934

        (1)  All claims confirmed                     849          29%
        (2)  All claims canceled                      353          12%
        (3)  Claim changes                           1732          59%

    c.  Certificates _ COMM'R INITIATED REEXAM .................................139

        (1)  All claims confirmed                      18          13%
        (2)  All claims canceled                       27          19%
        (3)  Claim changes                             94          68%


**EXHIBIT D**

**39**

# EXHIBIT E

# KALER LAW OFFICES

9930 MESA RIM ROAD
SUITE 200
SAN DIEGO, CALIFORNIA 92121
TELEPHONE: (858) 362-3151
FAX: (858) 824-9073

Intellectual Property

· Management
· Licensing
· Litigation

J. Michael Kaler

michael@kalerlaw.com

November 1, 2005

## Via FEDEX

Mr. Marc Jacovelli
President
Rally Manufacturing, Inc.
5255 NW 159th Street
Hialeah, FL 33014
Phone: 305-628-2886

## CONFIDENTIAL OFFER OF COMPROMISE SUBJECT TO FEDERAL RULES OF EVIDENCE § 408

RE:    Rally Manufacturing, Inc.'s ("RALLY") unauthorized usage of the technology
       taught in United States Patent No. 4,935,184.

Dear Mr. Jacovelli:

We have examined several of RALLY's products that incorporate plastic housings manufactured with plastics with different characteristics. From our examination, we have determined that the plastic housings of some of these products are substantially likely to be fabricated utilizing a process that infringes United States Patent Number 4,935,184 ("the '184 patent"), and we are continuing our investigations into other RALLY products. Further, our records indicate that RALLY is not currently licensed to utilize the '184 patented method.

I represent the Sorensen Research & Development Trust ("Trust"), the owner of the '184 patent entitled "Stabilized Injection Molding When Using a Common Mold Part With Separate Complimentary Mold Parts," issued on June 19, 1990. In addition to the '184 patent, the Trust is the owner of a number of patents issued to Jens Ole Sorensen, an inventor whose forty years in plastic injection molding have resulted in more than 65 United States patents and dozens of international patents. Mr. Sorensen has developed products and processes, which have been widely used in producing cassette tapes, medical devices, automotive parts, food and beverage containers, and children's toys. Some of Mr. Sorensen's present endeavors include developing methods to

**EXHIBIT E**

40

Mr. Marc Jacovelli, President
Rally Manufacturing, Inc.
Unlicensed usage of the '184 patented method
November 1, 2005
page 2

enable production of hollow injection molded products with reduced wall thickness and improved dimensional control. Where applicable, the capacity to produce injection-molded products with reduced wall thickness allows for the use of less plastic in the manufacture and generally allows for faster production cycle times.

The '184 patent provides a long-sought elegant solution to a pervasive problem in the injection molding of hollow plastic products. The problem is that the highly pressurized injection of molten plastic forces the mold parts to move relative to each other. This mold movement problem causes misalignment of the mold parts and results in products with walls of undesirable thickness variations if not adequately controlled. Mr. Sorensen has invented a number of methods for mold stabilization that are applicable in different injection molding situations, and can be used to supplement other methods such as the use of mechanical locking devices. For these inventions, Mr. Sorensen has been awarded several different patents recognized in the United States and other major industrial powers around the world.

The '184 patented method facilitates production of plastic components made with two or more plastic injections with different characteristics. The '184 patented technology provides an improved method for reducing mold misalignment during the injection molding process. This assists the manufacturer in producing parts with controlled dimensions fabricated within narrower tolerances. The improved dimensional control can be used to produce components with more refined fit and finish, improving the overall quality and appearance of the product. Moreover, the improved dimensional control can facilitate a reduction in material wasted and a reduction in manufacturing cycle time, both of which can be leveraged into reduced manufacturing cost.

The '184 patented method increases stabilization of the mold parts during injection molding of laminated plastic parts produced sequentially in two cavities made up of one common mold part and different complementary mold parts. The '184 patent teaches a method to stabilize the core during the second or later plastic injection by molding one or more stabilizing regions into the first plastic material component(s) that impede relative movement of the mold parts during the second or later injection. By providing this additional stabilization of the mold parts against movement during the injection process, hollow products may be produced having more controlled dimensions. Use of the '184 process offers significant benefit in the manufacture of two-plastic plastic housings and similar products.

The following table lists RALLY products that our inspection show to be substantially likely to have been produced through the use of a process which infringes the '184 patent (hereinafter, "Accused Products"). This list is not intended to be

**EXHIBIT E**

41

Mr. Marc Jacovelli, President
Rally Manufacturing, Inc.
Unlicensed usage of the '184 patented method
November 1, 2005
page 3

exhaustive, rather it indicates Accused Products that we have discovered and examined. Our investigation into additional Accused Products continues:

| ACCUSED PRODUCT |
|---|
| Rally Rechargeable Spotlight |

My client is prepared to discuss reasonable terms for a license that would allow RALLY to continue to practice the '184 process in the manufacture of its products. RALLY must obtain a license under the '184 patent in order to continue importing into, manufacturing, offering for sale and/or selling the Accused Products within the United States. This requirement extends to any additional infringing RALLY products that we have not yet identified. RALLY has a legal duty to avoid infringement of United States patents. RALLY's manufacture of its plastic housings outside the United States does not avoid infringement liability when infringing products are imported into the United States.

I have enclosed for your convenience, a set of D-size drawing number D-5579 prepared by my client. We are providing these drawings as exemplars of the Accused Products that illustrate our infringement analysis. The top view (Fig. 1) of each drawing shows the Accused Product with an exemplary section line 4-4 through the product. The sectional views shown in Fig. 4 taken along section line 4-4, and correspond to Fig. 2B of the '184 patent. Fig. 4 illustrates where each element of the patent claims appears in the Accused Product. A comparison of Fig. 4 and Figure 2B of the '184 patent (illustrated at the bottom-left of the drawing) demonstrates that the claimed limitations of the '184 patent are present in the Accused Products in the same manner as in a preferred embodiment of the patent. Both figures show a cross-section of the molds with the hollow products having a closed end and an open end positioned in the mold cavity formed between a first common mold part (10) and second complementary mold part (26). The products have laminated walls (38) that extend to the rim of the products and consist of plastics having different characteristics. Additionally, each product has a portion of the first plastic material component (20) which functions as a stabilizing region (30) to impede the relative movement of the mold parts during the second injection.

RALLY's use of the '184 patented technology is further substantiated by the enclosed claim charts associated with the attached drawings. The claim charts

**EXHIBIT E**

42

Mr. Marc Jacovelli, President
Rally Manufacturing, Inc.
Unlicensed usage of the '184 patented method
November 1, 2005
page 4

compare the illustrated Accused Product to claim number one (1) of the '184 patent. The first column of the claim chart quotes the text of the claim. The second column provides commentary pointing out the corresponding structure or element of the Accused Product. The third column is a remark reference number. Finally, the fourth column identifies one or more reference figures from the accompanying drawing showing the particular aspect that is the subject of the remark. The chart rows are broken down by convenience to the commentary text. For your convenient reference, a copy of the '184 patent is enclosed.

It may be possible, although not substantially likely, that RALLY manufactures some of the Accused Products in a manner such that production does not infringe the '184 patented process. If RALLY asserts that any Accused Product is not made with an infringing process, please provide us with detailed information about the Accused Process and an explanation of what elements of the '184 patented process that you contend are absent from the Accused Process. In the absence of such countervailing evidence, our analysis leads us to the conviction that RALLY is making unauthorized use of the '184 patented technology in the manufacture of each Accused Product.

**PLEASE BE ADVISED THAT THE FOREGOING IS A REQUEST UNDER THE UNITED STATES PROCESS PATENT AMENDMENTS ACT OF 1988, AND MORE SPECIFICALLY WITH REFERENCE TO 35 UNITED STATES CODE § 295, SEEKING FACTUAL INFORMATION NECESSARY TO VERIFY THAT PRODUCTS MADE, SOLD, IMPORTED INTO, OR USED IN THE UNITED STATES ARE MADE BY A PROCESS PATENTED IN THE UNITED STATES.**

The United States Process Patent Amendments Act of 1988 ("PPAA") provides at 35 U.S.C. § 295 as follows:

**Sec. 295. Presumption: Product made by patented process**

In actions alleging infringement of a process patent based on the importation, sale, offer for sale, or use of a product which is made from a process patented in the United States, if the court finds—

(1) that a substantial likelihood exists that the product was made by the patented process, and

(2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine,

Mr. Marc Jacovelli, President
Rally Manufacturing, Inc.
Unlicensed usage of the '184 patented method
November 1, 2005
page 5

the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made.

Please provide the information requested within thirty (30) days of the date of this letter. This provides RALLY with more than a reasonable amount of time to collect the required information. My client and I are prepared to hold such information in confidence, and to sign a suitable confidentiality agreement to that end.

Be advised that this constitutes a notice of patent infringement in violation of 35 U.S.C. § 271. Should RALLY fail to diligently investigate this matter upon receipt of this notice, it will be considered a breach of RALLY's affirmative duty to investigate allegations of patent infringement as provided in 35 U.S.C. § 287. Such breach of the duty to investigate is evidence of willful infringement of the '184 patent, which finding can support enhancement of damages awarded pursuant to 35 U.S.C. § 284.

We recognize that RALLY contracts out the fabrication of many components of its products to manufacturing agents. However, RALLY is ultimately responsible for the infringement of the '184 patent in making, importing, offering for sale or selling its products and components. RALLY's liability holds regardless of whether it makes these parts itself or through a third-party. Neither production of the Accused Products through manufacturing a gents, n or production of the Accused Products outside of the United States excuses RALLY's liability for infringement of the '184 patent. Title 35, section 271 of the United States Code provides that:

(a)    Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

Moreover, with regard to patented processes, section 271 provides:

(g)    Whoever without authority imports into the United States or offers to sell, sells, or uses within the United States a product which is made by a process patented in the United States shall be liable as an infringer, if the importation, offer to sell, sale, or use of the product occurs during the term of such process patent.

Mr. Marc Jacovelli, President
Rally Manufacturing, Inc.
Unlicensed usage of the '184 patented method
November 1, 2005
page 6

My client has no interest in the policing problems that are inherent in licensing contracted parts fabricators.  RALLY is the party that offers to sell and sells these products in the United States.  Therefore, RALLY is liable as a direct infringer for those products which infringe United States patents, including the '184 patent.

While our infringement and licensing discussions will be with RALLY, we will consider any evidence of non-infringement that is produced by RALLY or its manufacturing agents. If RALLY possesses evidence showing that any Accused Product is not actually made by an infringing process, providing that evidence to us immediately would greatly simplify matters.  My client is prepared to withdraw the assertion of infringement with respect to any product upon sufficient proof demonstrating that the process actually used to make the product does not infringe the '184 patent.

There are scores of businesses that have licensed their usage of the '184 patented technology.  To protect my clients' intellectual property rights, we cannot allow RALLY's unlicensed usage to continue.  During this narrow window of opportunity at this early stage wherein the parties can resolve this matter without incurring high costs and legal fees through amicable discussions leading to a license agreement, my client has authorized me to extend to license RALLY's past, present and future usage of the '184 patent in fabrication of the identified Accused Products for a one time fully paid up royalty of Two Hundred Twenty Thousand Dollars ($220,000).  This offer expires by its own terms if RALLY does not communicate its acceptance to this office on or before December 7, 2005.

Your anticipated courtesy in working with us toward a rapid and amicable resolution of this matter is greatly appreciated.

Cordially,

J. Michael Kaler

Encl:   Drawing No. D-5579
        Claim Chart for Drawing No. D-5579
        U.S. Patent No. 4,935,184

**EXHIBIT E**

45

CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2008 a copy of the foregoing DECLARATION OF MATTHEW STAVISH IN SUPPORT OF MOTION TO STAY LITIGATION PENDING THE OUTCOME OF THE U.S. PATENT AND TRADEMARK OFFICE REEXAMINATION PROCEEDING FOR THE PATENT-IN-SUIT was this served upon all counsel of record by placing a copy of the same in the United States Mail, postage prepaid, and sent to their last known address as follows:

James Michael Kaler, Esq.
Law Offices of James M. Kaler
9930 Mesa Rim Road, Suite 200
San Diego, CA 92121

Melody A. Kramer, Esq.
Kramer Law Office
9930 Mesa Rim Road, Suite 1600
San Diego, CA 92121

Executed on March 17, 2008 in Los Angeles, California

_____
Carrie L. Rose