1  J. MICHAEL KALER, SBN 158296
2  9930 Mesa Rim Road, Suite 200
   San Diego, California 92121
3  Telephone (858) 362-3151

4
   MELODY A. KRAMER, SBN 169984
5  9930 Mesa Rim Road, Suite 1600
   San Diego, California 92121
6  Telephone (858) 362-3150

7
   Attorneys for Plaintiff JENS ERIK SORENSEN,
8  as Trustee of SORENSEN RESEARCH AND
   DEVELOPMENT TRUST
9

10                     UNITED STATES DISTRICT COURT

11                FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12

13 | JENS ERIK SORENSEN, as Trustee of ) Case No. 08 CV 305 BTM CAB
   | SORENSEN RESEARCH AND           )
14 | DEVELOPMENT TRUST,               ) **OPPOSITION TO DEFENDANTS'**
                                     ) **MOTION TO STAY PENDING**
15 |                        Plaintiff, ) **OUTCOME OF REEXAMINATION**
16 |      v.                          ) **PROCEEDINGS**
                                     )
17 |                                  ) Date: April 25, 2008
18 | RALLY MANUFACTURING, INC., a    ) Time: 11:00 a.m.
19 | Florida Corporation; and DOES 1 – 100, ) Courtroom 15 – 5th Floor
                                     ) The Hon. Barry T. Moskowitz
20 |                        Defendants. )
21 |                                  ) *NO ORAL ARGUMENT*
                                     ) *UNLESS REQUESTED BY THE COURT*
22
23
24
25
26

27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ iii

SUMMARY OF OPPOSITION ..................................................................................... 1

FACTUAL SUMMARY ................................................................................................ 2

ARGUMENT .................................................................................................................. 3

I.   THE SPECIFIC CIRCUMSTANCES OF THIS REQUEST FOR STAY ARE DIFFERENT FROM THOSE IN THE RELATED *BLACK & DECKER* CASE ........................................................................................... 3

II.  NEWLY ANALYZED USPTO DATA SHOW THAT PLAINTIFF WOULD BE UNDULY PREJUDICED AND TACTICALLY DISADVANTAGED BY A STAY PENDING COMPLETION OF REEXAMINATION ................................................................................... 4

    A.   *Ex Parte* Reexaminations Can Be Expected to Extend for Five Years or More, Rather than 18-23 Months ........................................... 4

        *1.   A closer look at USPTO data shows the current length of reexamination proceedings to be far longer than 23 months* ............................................................................. 4

        *2.   Five-plus year reexaminations undermine congressional intent for use of the reexamination process.* ............................ 6

        *3.   Lengthy reexamination proceedings also undermine the intent of the Local Patent Rules.* ................................................ 7

        *4.   Caselaw supporting liberal grants of litigation stays pending the completion of reexamination proceedings are inapposite.* ............... 8

    B.   Plaintiff Would Be Prejudiced Through The Inability To Identify and Serve All Proper Defendants .......................................................... 11

    C.   Plaintiff Would Be Prejudiced Through The Loss Of Evidence. ....... 11

CONCLUSION ............................................................................................................ 13

# TABLE OF AUTHORITIES

<u>Cases</u>

*ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp. 1378 (N.D. Cal. 1994). ..................................................................................................9

*Blackboard, Inc. v. Desire2Learn, Inc.* Civil Action No. 9:06-CV-155 (E.D. Texas, 2008) ......................................................................................11

*Danis v. USN Communs, Inc.*, 2000 U.S. Dist. LEXIS 16900 at *4-5....................11

*Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.* 2007 WL 1655625 (N.D. Cal. 2007) .......................................................................3

*Gould v. Control Laser Corporation*, 705 F.2d at 1342, 217 USPQ at 986 .............9

*Jain v. Trimas Corp.*, 2005 WL 2397041, at *1 (E.D. Cal. Sept. 27, 2005).............3

*Madden v. Wyeth*, 2003 U.S. Dist. LEXIS 6427. ....................................................12

*Medichem, S.A. v. Rolabo, S.L.*, 353 F.3d 928, 936 (Fed.Cir.2003) ........................10

*MedImmune, Inc. v. Genentech, Inc.*, U.S., 127 S.Ct. 764 (2007) ..........................14

*MercExchange, L.L.C. v. eBay, Inc.*, 500 F.Supp.2d 556 83 U.S.P.Q.2d 1688 (E.D.Va. Jul 27, 2007). ........................................................................11

*NTP, Inc. v. Research in Motion, Ltd.,* 397 F.Supp.2d 785, (E.D.Va.2005). ......... 10

*Patlex Corp. v. Mossinghoff,* 758 F.2d 594 (Fed.Cir.1985) ....................................10

*Soverain Software LLC v. Amazon.Com, Inc,* 356 F.Supp.2d 660 (E.D.Tex.2005) .......................................................................................3

*Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107 (N.D.Cal. 2006). ............12

*Treppel v. Biovail Corp.*, 233 F.R.D. 363 (2006)...................................................12

*Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316 (Fed. Cir. 2001). .............3

<u>Statutes</u>

28 U.S.C § 2201 ...................................................................................................14

35 U.S.C. § 305 .......................................................................................................6

<u>Rules</u>

Fed.R. Civ.P, Rule 15(c)..................................................................................12

<u>Secondary Sources</u>

H.R. REP. No. 96-1307 pt. 1, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460-6463. ....................................................................................................... 6

**SUMMARY OF OPPOSITION**

The Court should deny Defendants' Motion for Stay on the grounds of a pending patent reexamination because the reexamination will likely extend for a period close to five years, creating a substantial likelihood of prejudice to Plaintiff.

Defendant Rally Manufacturing, Inc.'s Motion for Stay (Docket # 6) is largely duplicative of the motions for stay in several related cases[1], and Plaintiff's general arguments against the propriety of a stay in those cases is applicable here and thus incorporated by reference[2]. However, this Opposition contains data and details first described in case no. 07-CV-02321(the "Energizer case") that entirely change the landscape of the issue of stay requests on the '184 patent cases.

Since the filing of the first few related oppositions to motions for stay, Plaintiff has learned that the approximate duration of patent reexaminations has dramatically increased in recent years from an average of 18-23 months (as noted in prior arguments to the Court) to a duration likely to be closer to five years than to two years.

Because of this new data, a litigation stay pending reexamination completely undermines the entire original purpose of the reexamination process – to allow a prompt forum for review of the validity of a patent. It also undermines the intent and purpose of the Local Patent Rules for streamlined patent litigation.

The required balancing of the parties' interests weighs in favor of only a partial stay of proceedings, if that. The partial stay should allow initial discovery and motion practice to continue.

**FACTUAL SUMMARY**

---

[1] *Sorensen v. Black & Decker Corporation, et al*, Case No. 06-cv-1572, *Sorensen v. Giant International, et al*, Case No. 07-cv-02121, and *Sorensen v. Helen of Troy, et al*, Case No. 07-cv-02278

[2] See *Request for Judicial Notice* for docket numbers.

*Procedural Posture.* This action for patent infringement was filed February 15, 2008. On March 17, 2008, Defendants filed the pending Motion for Stay.

Recent other filings of '184 patent infringement cases bring the total case pending before this Court to 24.

*Status of '184 Patent Reexaminations.* Patent infringement defendant Black & Decker filed an Ex Parte Request for Reexamination of the subject '184 patent in July 2007 ("1st reexamination") and, on that basis, obtained an order staying the related case, *Sorensen v. Black & Decker Corporation, et al*, Case No. 06cv1572 ("Black & Decker Order"). Now, nine months later, no first office action for the 1st reexamination has yet issued, even though Plaintiff declined to file the optional patent owner's statement, thereby denying Black & Decker the ability to file more documents with the USPTO, in order to shave approximately two months from the process. *Kramer Decl.* ¶ 4.

Co-defendants in the Black & Decker case - Phillips Plastics and Hi-Tech Plastics – waited until December 21, 2007 to file a second third-party reexamination request ("2nd reexamination"), which the USPTO has just recently accepted. *Kramer Decl.* ¶ 5.

Closer analysis of USPTO data show that the current, average timeframe for conclusion of a reexamination is approximately five years, extending longer if an appeal to the Federal Circuit is sought. *Kramer Decl.* ¶ 6.

**ARGUMENT**

"A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze. [cites omitted]" *Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.* 2007 WL 1655625 (N.D. Cal. 2007).

"There is no *per se* rule that patent cases should be stayed pending reexaminations, because such a rule 'would invite parties to unilaterally derail' litigation." *Soverain Software LLC v. Amazon.Com, Inc,* 356 F.Supp.2d 660, 662 (E.D.Tex.2005), quoted in *Fresenius, supra.*

Defendants are trying to derail this litigation by essentially arguing *per se* entitlement to a stay based upon the Black & Decker stay. That argument fails because updated information regarding the average duration of reexaminations challenges the assumptions under which that stay was issued and warrant a closer examination by the Court.

I. DEFENDANTS' REQUEST FOR STAY SHOULD BE DENIED AS THE FACTS ARE DISTINGUISHABLE FROM THE *BLACK & DECKER* CASE.

The court is not required to stay judicial resolution of a patent case in view of reexaminations, rather the decision to stay is within the discretion of the Court. *Viskase Corp. v. American Nat. Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).

A court must weigh the parties competing interests <u>as presented by the specific facts of the case at bar</u>. *Jain v. Trimas Corp.*, 2005 WL 2397041, at *1 (E.D. Cal. Sept. 27, 2005) (emphasis added).

This motion is materially different from the Black & Decker situation upon request for stay in at least two respects: (1) the Court now has more accurate information regarding the expected duration of reexamination proceedings; and (2) there was no extensive delay between initial contact by the Plaintiff and filing of this suit.

Issuance of a stay that will likely extend approximately five years, longer than the time that the parties have even been in communication, is excessive.

II. PLAINTIFF WOULD BE UNDULY PREJUDICED AND TACTICALLY DISADVANTAGED BY A STAY.

A new analysis based on USPTO statistical data shows that the likely duration of an *ex parte* reexamination proceeding is closer to five years, than it is to two. Such a lengthy stay undermines the congressional intent for implementation of the reexamination process, and also undermines the Local Patent Rules. Furthermore, this extensive delay would prejudice the Plaintiff through inability to identify and serve all appropriate defendants and inability to locate and preserve necessary evidence and record witness testimony.

Thus, Plaintiff would be unduly prejudiced and subjected to a clear tactical disadvantage by a complete stay of this case pending completion of two *ex parte* reexamination proceedings before the USPTO.

A. *Ex Parte* Reexaminations Can Be Expected to Extend for Five Years or More, Rather than 18-23 Months.

Defendants' Motion for Stay relies on this Court's order to stay the related '184 patent infringement case against Black & Decker. The Black & Decker Order was based on statistical data from the USPTO's office that has since been shown to be obsolete, in that it reflects an average of all reexamination activity since 1981, and ignores the huge increase in reexamination backlog that has occurred over the past six years.

*1. A closer look at USPTO data shows the current length of reexamination proceedings to be far longer than 23 months.*

In the Black & Decker motion for stay, the moving parties pointed to a June 2006 statistical report from the USPTO that listed average pendency of reexaminations to be 22.8 months, and median pendency to be 17.6 months[3] ("2006

---

[3] See *Judicial Notice*, Docket #180, Exhibit B, from Black & Decker case.

Report"). This was a material factor in the Court's decision to stay that case.[4] However, closer examination of the USPTO's raw data shows a remarkably different picture of the duration of reexaminations than the 2006 Report suggests.

The 2006 Report is based upon averages over the entire 28 year course of the existence of reexamination proceedings, since late 1981. What it does not show, however, is the dramatic increase in filings relative to the number of certificates issued (which signal the end of the reexamination proceeding) over the past few years.

USPTO Annual Reports contain statistics on the number of ex parte reexamination filings, the number of those that are known to be related to litigation, the number of ex parte reexaminations granted, and the total number of certificates issued. The official website contains annual reports back to 1993 which contain this statistical data back to 1989. *Kramer Decl.* ¶ 7, Exhibit A.

By comparing the incoming reexamination filings vs. the outgoing certificates, a pattern of dramatically increasing backlog appears. Assuming a zero carryover from 1988 into the 1989 figures for which records are available, the backload of ex parte reexaminations has increased 100-fold from 1989 to the end of 2007 (from 16 to an estimated 1,658). *Kramer Decl.* ¶ 8, Exhibit B.

If the PTO were able to keep issuing certificates at the rate of the highest number of reexamination certificates ever issued in a single year, 367, and have zero new filings, it would still take approximately 4.5 years for the PTO to erase the backload of *ex parte* reexaminations. *Kramer Decl.* ¶ 9. If the rate of certificate issuances were at the average for the past five years (250), it would take 6.6 years to erase that same backlog. *Kramer Decl.* ¶ 10.

---

[4] See *Judicial Notice*, Docket #243, page 7:19-22, in the Black & Decker case: "An average delay for reexamination of approximately 18-23 months is especially inconsequential where Plaintiff himself waited as many as twelve years before bringing the present action. (See PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. #180-3.)"

The impact of this newly analyzed USPTO data extends beyond the realization that reexaminations are extending for longer and longer periods of time.  Five-plus year long reexaminations (1) undermine the legislative policy underlying creation of the reexamination process in the first place; and (2) undermine this District's efforts to streamline and expedite intellectual property cases through newly implemented Local Patent Rules; and (3) render older case law on the subject of litigation stays pending reexamination inapplicable.

### 2. *Five-plus year reexaminations undermine congressional intent for use of the reexamination process.*

The express congressional intention was that reexamination should "provide a useful and necessary alternative for challengers and patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner." H.R. REP. No. 96-1307 pt. 1, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460-6463.

All reexamination proceedings under this section, including any appeal to the Board of Patent Appeals and Interferences, are to be conducted with "special dispatch." 35 U.S.C. § 305.

As demonstrated above, efficiency and "special dispatch" have not proven to be the case in recent years.  To the contrary, the filing of reexaminations has become an effective weapon to slow down or stop patent infringement plaintiffs.  This is not only demonstrated by numerous articles recommending this strategy to infringement defendants,[5] but it is also demonstrated by the USPTO's own information. *Kramer Decl.* ¶ 11.

The PTO was already commenting on problems keeping pace with these increased litigation related filings in 2004, even though the estimated backlog was still less than 800 at the end of 2003. *Kramer Decl.* ¶ 12. In fact, the frequent use of multiple reexamination requests by litigants to further delay of the litigation fueled a

---

[5] See *Kramer Decl.* Exhibit D.

PTO rule change in 2004 changing the standard of review for second or subsequent reexamination requests.

These statistics are not a disparagement of the PTO's efforts. It is a recognition that the recent increase in reexamination filings have overwhelmed the staffing and capabilities of the PTO. The increase has made the statutory mandate of "special dispatch" meaningless phrase.

*Ex parte* reexamination requests known to be related to litigation have soared from a mere 9% in 1990 to 57% for 2007. In fact, the frequent use of multiple reexamination requests fueled a USPTO rule change in 2004 changing the standard of review for second or subsequent reexamination requests.

The "Notice of Changes in Requirement" document (see *Kramer Decl.* ¶ 13, Exhibit C) made the following statement in the Background section:

> It has been the Office's experience, however, that both patent owners and third party requesters have used a second or subsequent reexamination request . . . to prolong the reexamination proceeding, and in some instances, to turn it essentially into an <u>inter partes</u> proceeding. These actions by patent owners and third party requesters have resulted in multiple reexaminations taking years to conclude, thus making it extremely difficult for the Office to conclude reexamination proceedings with "special dispatch" as required by statute (35 U.S.C. 305 for <u>ex parte</u> reexamination, 35 U.S.C. 314 <u>inter partes</u> reexamination).

If the USPTO was having problems completing reexaminations with "special dispatch" in 2004, the sheer volume of increased filings since then demonstrate an even larger problem now. This turns what was intended to be an efficient, timely process into an almost guaranteed strategy for delay in patent litigation.

        3.    *Lengthy reexamination proceedings also undermine the intent of the Local Patent Rules.*

In late 2006, this Court adopted and implemented a set of Patent Local Rules with the stated purpose of providing a predictable and uniform treatment for IP

litigants and streamline the process by which a patent case is litigated, shortening the time to trial or settlement and thereby reducing costs for all parties involved. The new rules set up a schedule where a claim construction hearing would be held approximately nine months after the complaint is filed, and trials set at approximately 18 months after complaints are filed. *Kramer Decl.* ¶ 14.

Judge Dana M. Sabraw, who chaired the committee that established the new patent local rules, said: "A majority of the judges of the Southern District are firmly committed to holding claim construction hearings within nine months for the filing of the complaint, and to setting a trial date within 18 months of that filing." *Kramer Decl.* ¶ 15, Exhibit D.

None of these purposes and intents can be met when an infringement defendant can file an *ex parte* reexamination request and receive an almost automatic multi-year exception from the timeline set out in the Local Rules.

While district judges are working to streamline and expedite patent cases, the USPTO's statutorily-required "special dispatch" procedure has been getting slower and slower.

The net effect in this case and the related '184 infringement cases is that two carefully timed *ex parte* reexamination have been relied upon to deny Plaintiff the ability to enforce its valid patent.

> 4. *Caselaw supporting liberal grants of litigation stays pending the completion of reexamination proceedings are inapposite.*

It is no surprise that so many *ex parte* reexamination requests are flooding the USPTO. These filings have become an oft-used weapon by patent infringement defendants because litigation stays are routinely granted pending conclusion of reexamination. In 1990, the percentage of *ex parte* filings that were known to be related to litigation was a mere nine percent (9%). By 2007, after a host of publications had pushed reexamination as a litigation strategy for defendants, the

1 percentage had increased more than six-fold to 57%. The Black & Decker Order was
2 based on legal opinions that either predated the recent dramatic increase in filings
3 and consequent backlog of cases, or opinions that relied on that same outdated
4 factual scenario.

5 The issue in the *Ethicon* case was whether the PTO could stay a reexamination
6 pending completion of a court case, not the other way around. The *Ethicon* court did
7 cite *Gould v. Control Laser Corporation*, 705 F.2d at 1342, 217 USPQ at 986, for
8 the proposition that the court had authority to order a stay pending conclusion of a
9 PTO reexamination. What the *Gould* decision actually said was that "power already
10 resides with the Court to prevent costly pretrial maneuvering which attempts to
11 *circumvent* the reexamination procedure." (emphasis in original). Plaintiff has done
12 nothing here or in related cases trying to circumvent the reexamination procedure.

13 The "'liberal policy' in favor of granting motions to stay pending the outcome
14 of PTO reexamination proceedings" (Docket #243, page 5:19-21) came from the
15 1994 case of *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp. 1378, 1381
16 (N.D. Cal. 1994). A close look at that decision reveals a statement by the court that
17 "it is clear from the cases cited by the parties that there is a liberal policy of granting
18 stays pending reexamination," but does not directly cite to any particular case.
19 Furthermore, even if the Court had evaluated the approximately length of
20 reexamination proceedings in 1994 (there is no indication that it did), it would have
21 shown that the USPTO was effectively handling its caseload, issuing almost as many
22 certificates in a year as new requests that were being accepted. A liberal policy of
23 granting motions to stay pending the outcome of reexamination proceedings was
24 fully appropriate in 1994. That is no longer the case.

25 *Photoflex Products, Inc. v. Circa 3 LLC*, No. C 04-03715 JSW, 2006 U.S.
26 Dist. LEXIS 37743, at *2-3 (N.D.Cal. May 24, 2006), also relies on the
27 misconstrued *Gould* case, and the outdated *ASCII* case, as did the other cases.
28

1  None of the cases cited in the *Black & Decker* order appear to give any consideration whatsoever to the relative length of time that the reexamination will take. In more recent cases, however, Courts are beginning to acknowledge the extended duration of reexamination proceedings and are exercising their inherent authority to not stay proceedings pending reexaminations that can take years to complete.

> A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations, regardless of their relevancy to infringement claims which the court must analyze. *See id.* ("The [district] court is not required to stay judicial resolution in view of the [PTO] reexaminations."); *see also Medichem, S.A. v. Rolabo, S.L.,* 353 F.3d 928, 936 (Fed.Cir.2003) ("[O]n remand, a stay of proceedings in the district court pending the outcome of the parallel proceedings in the PTO remains an option within the district court's discretion.") (stated in the context of reissue proceedings for interfering patents before the Board of Patent Appeals and Interferences); *Patlex Corp. v. Mossinghoff,* 758 F.2d 594, 602-03 (Fed.Cir.1985) (recognizing judicial discretion in stay determinations for patent proceedings).

*NTP, Inc. v. Research in Motion, Ltd.,* 397 F.Supp.2d 785, 787 (E.D.Va.2005). (2005).

The *NTP* court was adamant that it was not going to stay litigation based upon the moving party's speculation that that patent would be invalidated shortly.

> The likely duration and result of the PTO's reexamination proceedings and any subsequent (and likely) appeals are in dispute. RIM, turning a blind eye to the many steps that must still be taken before a final determination can be issued by the PTO and confirmed, suggests that the patents-in-suit will be invalidated in a matter of *months.* NTP, on the other hand, insists on the likelihood of the opposite result and gives a reality-based estimated time frame of *years.* Regardless of which party's predictions this Court might adopt, any attempt at suggesting a likely time frame and outcome of the PTO reexamination process is merely speculation. This Court cannot and will not grant RIM the extraordinary remedy of delaying these proceedings any further than they already have been based on conjecture.

1 *Id.*

2 Further, the case of *Blackboard, Inc. v. Desire2Learn, Inc.* Civil Action No. 9:06-CV-155 (E.D. Texas, 2008), recently proceeded to plaintiff's verdict despite e*x parte* and *inter partes* reexaminations that had been ordered 13 months previous in which no office actions had been issued.

Other cases have reaffirmed that district courts are not obligated to issue stays, including *MercExchange, L.L.C. v. eBay, Inc.*, 500 F.Supp.2d 556, 562, 83 U.S.P.Q.2d 1688 (E.D.Va. Jul 27, 2007).

Because the re-analyzed USPTO data show that the 1st reexamination on the '184 patent is likely to not be complete for approximately 5 years from its filing, and because the 2nd reexamination has the potential to introduce even further delay in the completion of reexamination proceedings, a stay pending reexamination by the USPTO should not be granted.

B. <u>Plaintiff Would Be Prejudiced Through The Inability To Identify and Serve All Proper Defendants</u>.

As detailed more fully in the related oppositions to motions for stay, Fed.R.Civ.P, Rule 15(c), places limitations on a party's ability to amend pleadings to add or substitute parties, and places restrictions on when such amendments relate back to the date of the initial filings. Inability to identify responsible parties inhibits the ability to give those parties notice of the case, thereby increasing the chance that they will claim prejudice later, and increasing the likelihood that other parties will destroy or dispose of critical evidence.

A complete stay of litigation before any preliminary steps are taken to identify proper parties and ensure initial discovery or preservation of evidence greatly prejudices the Plaintiff and may well prejudice the entire judicial process in this case.

C. <u>Plaintiff Would Be Prejudiced Through The Loss Of Evidence.</u>

The Federal Rules of Civil Procedure do not expressly impose a duty to

1 preserve evidence. Courts have construed the federal discovery rules, particularly Rule 26, to imply a duty to preserve all evidence that may be relevant in a case. *See Danis v. USN Communs, Inc.*, 2000 U.S. Dist. LEXIS 16900 at *4-5. "The obligation to preserve arises when the party has notice that the evidence is relevant to litigation -- most commonly when the suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 371 (2006).

If a complete stay is issued, there is no assurance that parties (whether parties to the suit or otherwise) will have knowledge of any obligation to preserve evidence, and in the case of third-party suppliers would actually have a disincentive to preserve evidence.

A preservation order protects the producing party by clearly defining the extent of its preservation obligations. *Id*. at 370. "In the absence of such an order, that party runs the risk of future sanctions if discoverable information is lost because [the party] has miscalculated." *Id*. Further, "[preservation] orders are increasingly routine in cases involving electronic evidence, such as e-mails and other forms of electronic communication." *Id*. at 370. Because the duty of preservation exists without a court order, some courts are reluctant to grant motions to preserve evidence. *See Madden v. Wyeth*, 2003 U.S. Dist. LEXIS 6427.

Plaintiff needs to have an opportunity to conduct at least preliminary discovery and request a detailed preservation order, otherwise it will be subjected to substantial prejudice as a result of a stay.

Motions to stay pending patent reexamination have been denied where the likely length of reexamination will serve to exacerbate the risk of lost evidence. In *Telemac Corp. v. Teledigital, Inc.*, 450 F.Supp.2d 1107, 1111 (N.D.Cal. 2006). That is very much the situation here.

## CONCLUSION

There is no *per se* rule that patent cases should be stayed pending reexamination. The perception of such a rule has invited parties such as Defendants to move for stay on the sole grounds that someone else's reexamination request is pending before the USPTO.

A complete stay on all aspects of all '184 patent cases is not appropriate as this Court has recently confirmed in its orders on Helen of Troy/OXO and Giant's motions for stay.

Plaintiff has now presented the Court will newly analyzed USPTO data that change the entire framework in which the Court enter stays in the three earliest '184 patent case stays. This warrants a new look and new balance of the equities involved in staying this and the other '184 lawsuits.

Because the new data shows that a litigation stay pending reexamination completely undermines the entire original purpose of the reexamination process, as well as the Local Patent Rules, and would act to prejudice the Plaintiff in numerous respects, the Court should deny the requested stay.

RESPECTFULLY SUBMITTED this Thursday, April 10, 2008.

> JENS ERIK SORENSEN, as Trustee of
> SORENSEN RESEARCH AND DEVELOPMENT
> TRUST, Plaintiff
>
> /s/ J. Michael Kaler
> _____
> J. Michael Kaler, Esq.
> Melody A. Kramer, Esq.
> Attorneys for Plaintiff

PROOF OF SERVICE

I, J. Michael Kaler, declare: I am and was at the time of this service working within in the County of San Diego, California. I am over the age of 18 year and not a party to the within action. My business address is the Kaler Law Offices, Inc., 9930 Mesa Rim Road, Suite 200, San Diego, California, 92121.

On Thursday, April 10, 2008, I served the following documents:

**OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS**

**DECLARATION OF MELODY A. KRAMER IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS**

**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS**

| PERSON(S) SERVED | PARTY(IES) SERVED | METHOD OF SERVICE |
|---|---|---|
| Gary M. Anderson<br>FULWIDER PATTON LLP<br>Howard Hughes Center<br>6060 Center Drive, Tenth Floor<br>Los Angeles, CA 90045<br>litdocketla@fulpat.com<br>ganderson@fulpat.com | Rally Manufacturing, Inc. | Email - Pleadings Filed with the Court via ECF |

☐ (Personal Service) I caused to be personally served in a sealed envelope hand-delivered to the office of counsel during regular business hours.

☐ (Federal Express) I deposited or caused to be deposited today with Federal Express in a sealed envelope containing a true copy of the foregoing documents with fees fully prepaid addressed to the above noted addressee for overnight delivery.

☐ (Facsimile) I caused a true copy of the foregoing documents to be transmitted by facsimile machine to the above noted addressees. The facsimile transmissions were reported as complete and without error.

☐ (Email) I emailed a true copy of the foregoing documents to an email address represented to be the correct email address for the above noted addressee.

☒ (Email--Pleadings Filed with the Court) Pursuant to Local Rules, I electronically filed this document via the CM/ECF system for the United States District Court for the Southern District of California.

14.

Case No. 08CV305 BTM CAB

☐ (U.S. Mail) I mailed a true copy of the foregoing documents to a mail address represented to be the correct mail address for the above noted addressee.

I declare that the foregoing is true and correct, and that this declaration was executed on Thursday, April 10, 2008, in San Diego, California.

DATED this Thursday, April 10, 2008.

/s/ J. Michael Kaler
J. Michael Kaler

15.

Case No. 08CV305 BTM CAB