1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| Jens Erik Sorensen, | Case Nos. 08cv0060 BTM (CAB); 08cv0070; 08cv0305 |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Emerson Electric Co., et al., | |
| Defendants. | |

## Introduction

These consolidated cases arise out of Plaintiff Jens Erik Sorensen's allegations of infringement of United States Patent No. 4,935,184 (the "'184 Patent"). On August 19, the remaining defendants (Emerson Electric Co., Ryobi Technologies, Inc., and Rally Manufacturing, Inc., collectively "Defendants") moved for summary judgment. Defendants assert that Sorensen's cancellation of dependent Claims 2 and 4 of the '184 Patent during reexamination proceedings substantively changed the scope of independent Claim 1, resulting in absolute intervening rights for Defendants. For the reasons set forth below, the Court DENIES Defendants' motion as premature.

## Facts

The '184 Patent describes a process for creating injection-molded cup-like plastic objects. In December 2007 and February 2008, the Patent and Trademark Office ("PTO")

1  granted two separate requests for reexamination of the '184 Patent.  The resulting

2  reexamination proceedings were merged in February 2008.

3      The central topic of the reexamination proceedings, as they relate to Defendants'

4  motion, is the definition of the term "laminated walls."  The first sentence of Claim 1 of the

5  '184 Patent claims "[a] method of cyclic injection molding a thin-walled hollow, plastic product

6  having a closed end and an open end with **laminated walls** terminating in a rim at the open

7  end . . . ."  Claim 1 is the only independent claim in the '184 Patent, and thus all

8  embodiments of the patented invention must contain "laminated walls."

9      From the outset of the reexamination proceedings, Sorensen urged that "laminated

10  walls" should be defined as "substantially **coextensive layers in [a] face-to-face contacting**

11  **relationship** that cover and spread over one another" ("the 'layers' definition").  The

12  Examiner initially adopted this definition in the First (non-final) Agency Action (Oct. 31, 2008).

13  This definition is consistent with Figures 2A and 2B of the '184 Patent, which depict the

14  creation of a cup-like object whose side walls are composed of two overlapping layers of

15  plastic.

16      However, in the Second (non-final) Office Action (Aug. 21, 2009), the Examiner found

17  that the "layers" definition is not sufficiently broad to cover the plastic product depicted in

18  Figures 4 and 5 and (according to the Examiner) described in Claims 2 and 4.  The two

19  plastic components forming the cup-like object in Figures 4 and 5 are depicted as strips

20  running lengthwise up and down the side of the cup-like object, touching each other only

21  along their respective edges.  No part of Figures 4 or 5 shows the two plastic components

22  overlapping in layers (as is depicted in Figures 2A and 2B).

23      Consequently, the Examiner broadened the definition of "laminated" to include

24  edge-to-edge abutment, stating in the Second (non-final) Office Action that "for an object to

25  be 'laminated' it must be composed of substantially **coextensive parts in [a] face-to-face**

26  **contacting relationship**" (the "'edges' definition").  According to the Examiner, the

27  application of the edges definition enabled dependent Claims 2 and 4 (as supposedly

28  illustrated in Figures 4 and 5) to contain "laminated walls," and thereby to fit within the

1    limitations of independent Claim 1.  The Examiner maintained the "edges" definition in the

2    Final Office Action (Jan. 8, 2011).

3         However, after applying the "edges" definition to all instances of the phrase "laminated

4    walls," the Examiner rejected all claims in the '184 Patent as anticipated by the prior art.[1]

5    Rather than appealing all findings contained in the Final Action, Sorensen elected (after a

6    conversation with the Examiner) to cancel Claims 2 and 4.  This allowed the Examiner to

7    change the definition of "laminated walls" from the "edges" definition back to the "layers"

8    definition, and thereby to eliminate six of the nine prior art rejections contained in the final

9    action.

10        On August 19, 2011, Defendants in the present litigation moved for summary

11   judgment based on their argument that the cancellation of Claims 2 and 4 (both of which are

12   dependent on Claim 1 and are described as "embodiments" of Claim 1) substantively

13   changed the scope of Claim 1.  A claim construction hearing is scheduled for Monday,

14   February 27, 2012.

15

16                                    **Discussion**

17        "The doctrine of absolute intervening rights protects an accused infringer's right to

18   continue using, selling, or offering to sell specific products covered by reissued or

19   reexamined claims when the particular accused product had been made before the date of

20   the reissue or reexamination and the scope of the claims is *substantively changed*."  Marine

21   Polymer Technologies, Inc. v. HemCon, Inc., --- F.3d ---, 2011 WL 4435986, at *4 (Fed. Cir.

22   //

23   //

24   //

25   //

26   _____

27        [1]Most notably, the Examiner found that several claims of the '184 patent were
     anticipated by U.S. Patent 3,178,497 (referred to in the record and by the parties as
28   "Moscicki"), a patent that covers injection-molded cup-like objects with cylindrical longitudinal
     strips running up and down the walls of the cup.

Sept. 26, 2011) (emphasis added); see 35 U.S.C. §§ 252[2] and 307(b)[3].  In Neupak, Inc. v. Ideal Manufacturing and Sales Corp., 41 Fed. Appx. 435 (Fed. Cir. 2002), the Federal Circuit explained:

> The effect of a reexamined patent during the period before issuance of the reexamination certificate is governed by 35 U.S.C. §§ 252 and 307(b).  Under those provisions, if the patentee makes substantive changes in the claims during reexamination, there is an irrebuttable presumption that the original claims were materially flawed. . . . In that setting, the statute relieves those who may have infringed the original claims from liability during the period before the claims are validated.

41 Fed. Appx. at 442, 2002 WL 1363568 at *6 (Fed. Cir. June 24, 2002) (citing Bloom Engineering Co., Inc. v. North American Mfg. Co., Inc., 129 F.3d 1247, 1249 (Fed. Cir. 1997)).  Defendants contend that Sorensen's cancellation of Claims 2 and 4 during the reexamination proceedings altered the scope of Claim 1, and therefore Defendants are entitled to intervening rights with respect to products that allegedly infringed on the '184 Patent.

Sorensen raises a series of objections to the application of intervening rights to the '184 patent.  First, he argues based on 37 C.F.R. §§ 1.116(d)(2) and 1.530(j) that the Examiner could not have permitted the claim cancellations during reexamination if those cancellations substantively change the scope of the remaining claims, and that this Court is bound by the Examiner's implied finding of no substantive change.  Second, he suggests that infringers relying on intervening rights to escape liability must show detrimental reliance on

_____

[2]35 U.S.C. § 252 states:  "[T]he reissued patent, to the extent that its claims are substantially identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.  A reissued patent shall not abridge or affect the right of any person . . . who, prior to the grant of a reissue, made . . . anything patented by the reissued patent, to continue the use of . . . the specific thing so made, . . . unless the making . . . of such thing infringes a valid claim of the reissued patent which was in the original patent."

[3]35 U.S.C. § 307(b) states:  "Any proposed amended or new claim determined to be patentable and incorporated into a patent following a reexamination proceeding will have the same effect as that specified in section 252 of this title for reissued patents on the right of any person who made, purchased, or used within the United States, or imported into the United States, anything patented by such proposed amended or new claim, or who made substantial preparation for the same, prior to issuance of [the] certificate [issued when the time for appeal of the reexamination has expired or any appeal proceeding has terminated.]"

1    an aspect of the original claims that was subsequently changed.  Third, he contends that

2    intervening rights apply only where there has been a textual amendment to the claim at

3    issue.  Lastly, Sorensen asks in the alternative that the Court wait until after the upcoming

4    claim construction proceedings before ruling on Defendants' motion.  The Court addresses

5    each of these arguments in turn.

6

7    **A.    37 C.F.R. §§ 1.116(d)(2) and 1.530(j)**

8         As a threshold issue, Sorensen argues that it is impossible, as a matter of law, for the

9    cancellations of Claims 2 and 4 to substantively change the scope of other claims.  Sorensen

10   first relies on 37 C.F.R. § 1.116(d)(2), which states:

11        [A]n amendment made after a final rejection or other final action
          (§ 1.113) in an ex parte reexamination filed under § 1.510 . . .
12        may not cancel claims where such cancellation affects the scope
          of any other pending claim in the reexamination proceeding[.]

13

14   "Final actions," as defined in § 1.113, include Final Office Actions.  Sorensen filed his

15   amendment canceling Claims 2 and 4 in June 2010, several months after the examiner

16   issued its Final Office Action on January 8, 2010.  Thus, Sorensen argues that "[t]he

17   Examiner . . . thereby acknowledged that the cancellations did not affect the scope of other

18   pending claims."  (Pl. Opp. Mem. at 5.)  Sorensen's only case citation supporting this

19   conclusion states merely that "government officials are presumed to have 'properly

20   discharged their official duties.'" (Pl. Opp. Mem. at 5 (citing In re Portola Packaging, Inc., 110

21   F.3d 786, 790 (Fed. Cir. 1997)).)

22        Even assuming that Sorensen is correct, and the Court can presume that the

23   Examiner necessarily determined that the cancellation of Claims 2 and 4 would not affect the

24   scope of the other pending claims, Sorensen nowhere explains why such a determination

25   by the Examiner would be binding on this Court.  To the contrary, Sorensen concedes

26   elsewhere in his brief that "[a] court is not bound by the PTO's interpretation of patent claims

27   and must make its own independent determination on the legal question of claim

28   construction."  (Pl. Opp. Mem. at 16 (citing SRAM Corp. v. AD-II Eng'g, Inc., 465 F.3d

1351, 1359 (Fed. Cir. 2006)).)  Sorensen argues instead that the Examiner's presumed determination of no substantive change is immune from challenge because Defendants, as third parties to the reexamination proceedings, lack standing.  But while Defendants cannot bring a direct challenge against the PTO, they are certainly permitted to challenge relevant PTO determinations in litigation against the patent holder.  Syntex (U.S.A.) Inc. v. U.S.T.P.O., 882 F.2d 1570, 1576 (Fed. Cir. 1989) ("[A] potential infringer may not sue the PTO seeking retraction of a patent issued to another by reason of its improper allowance by the PTO.  A remedy must await confrontation with the patent owner.  The same is true with respect to a reissued patent.").

Second, Sorensen argues based on 37 CFR § 1.530(j) that where, as here, the patent expires during the reexamination proceedings, claim cancellations are the only permissible amendments to the patent.   Section 1.530(j) states:

> No amendment may be proposed for entry in an expired patent.
> Moreover, no amendment, other than the cancellation of claims,
> will be incorporated into the patent by a certificate issued after
> the expiration of the patent.

Sorensen concludes, based on the application of this regulation, that the Examiner necessarily found that the cancellation of dependent Claims 2 and 4 did not have the effect of amending the other claims.

This argument suffers from the same defect as Sorensen's § 1.116(d)(2) argument:  Even if the Court can presume the Examiner must have determined that the cancellations did not amend the '184 Patent in any other way, Sorensen has failed to show why such a determination would be binding on this Court.  Additionally, § 1.530(j) speaks of amendments to *patents*, not amendments to specific *claims*.  The plain language of this provision bars textual amendments other than claim cancellations, not secondary effects caused by permissible cancellations.

Thus, neither § 1.116(d)(2) nor § 1.530(j) bind this Court to implied, necessary findings by the Examiner that the cancellations of Claims 2 and 4 did not substantively change the scope of Claim 1.

**B.    Suggested Reliance Requirement**

Sorensen's opposition brief mentions detrimental reliance in passing, stating:  "[T]he court in Slimfold found . . . that the accused infringer 'did not demonstrate that it relied to its detriment on any aspect of the original claims that was changed by reissue.'"  (Pl. Opp. Mem. at 14 (citing Slimfold Mfg. Co. v. Kinkead Indus., Inc., 810 F.2d 1113, 1117 (Fed. Cir. 1987)).) However, there is no detrimental reliance requirement for infringement defendants claiming absolute intervening rights, and Sorensen's reliance on Slimfold is misplaced.

First, the cases listed on pages 8 and 9 of Sorensen's opposition brief are alleged by Sorensen to include "every instance where the Federal Circuit has applied the provisions of § 252 to a reexamined patent claim," and none of these cases so much as mentions a reliance requirement for intervening rights.  Second, there is nothing in the language of either § 307(b) or § 252 referring to a reliance requirement.  Rather, § 252 is phrased in terms of rights belonging to the would-be infringer that are limited only where a post-reexamination (or reissued) patent is identical to the original patent.  Thus, in Engineered Data Products, Inc. v. GBS Corp., 506 F. Supp. 2d 461, 468 (D. Colo. 2007), the court reasoned that Slimfold "cannot be read to impose [a detrimental reliance] requirement in light of the statutory language and subsequent precedent defining 'absolute' intervening rights . . . ." Thus, Sorensen fails to establish a detrimental reliance requirement under either § 307(b) or § 252.

**C.    Application of Intervening Rights to Claims Not Textually Amended**

By its plain language, 35 U.S.C. § 307(b) applies only to "proposed amended or new claims."  However, Defendants' two primary cases, University of Virginia Patent Foundation v. General Electric Co., 755 F. Supp. 2d 709 (W.D.Va. 2010) and Marine Polymer Technologies, Inc. v. HemCon, Inc., --- F.3d ---, 2011 WL 4435986 (Fed. Cir. Sept. 26, 2011), both hold that § 307(b) can apply to an independent patent claim that has not been textually amended where cancellations of other claims in that patent substantively changed the scope of the independent claim.  This proposition is consistent with the policy rationale for absolute intervening rights.  See Bloom Engineering Co., Inc. v. North American

1  Manufacturing. Co., Inc., 129 F.3d 1247, 1249 (Fed. Cir. 1997) ("Sections 307 and 252 shield
2  those who deem an adversely held patent to be invalid; if the patentee later cures the
3  infirmity by reissue or reexamination, the making of substantive changes in the claims is
4  treated as an irrebuttable presumption that the original claims were materially flawed.  Thus
5  the statute relieves those who may have infringed the original claims from liability during the
6  period before the claims are validated.").

7        The facts of Marine Polymer closely resemble the case at bar.  Marine Polymer
8  involved a patent for a material (a "polymer") that accelerates hemostasis (the process that
9  causes bleeding to stop) and is useful in medical applications. 2011 WL 4435986, at *1. The
10  independent claims in that patent required the polymer to be "biocompatible," i.e. not to
11  cause a negative biological reaction.  Id.  The dependent claims embodied polymers with
12  varying levels of biocompatibility, ranging from "no negative biological reactivity" to "mild
13  biological reactivity."  After a Markman hearing in 2008, the District Court adopted a narrow
14  construction of "biocompatibility," defining it as "no detectable biological reactivity."  Id. at 2.

15        In 2009, during the pendency of the infringement action, the defendant filed an
16  application for reexamination of the patent.  The examiner initially adopted a broader
17  construction of "biocompatibility" ("*little* or no detectable reactivity"), reasoning that the district
18  court's narrower definition was inconsistent with the numerous dependent claims allowing
19  for mild biological reactivity.  Id. at 3 (emphasis added).  However, based on the broader
20  construction, the examiner issued a preliminary rejection of all claims as invalid in light of the
21  prior art.  Id.  Consequently, the patent holder canceled certain dependent claims during
22  reexamination proceedings in order to enable the examiner to adopt the district court's
23  narrow definition, thereby avoiding the prior art rejections.  Id.

24        Ultimately, the district court granted summary judgment of literal infringement in favor
25  of the patent holder.  The Federal Circuit vacated the district court's decision and granted
26  absolute intervening rights to the defendant, since "the scope of the claims actually and
27  substantively changed because of [the patent holder's] arguments to the PTO[.]"  Id. at *6.
28  In light of Marine Polymer, there is no doubt that defendants in patent actions can establish
intervening rights under §§ 252 and 307(b) as to patent claims that remain textually identical

08cv0060 BTM (CAB); 08cv0070, 08cv0305

1   to the original claim, provided that they can show a substantive change to the scope of those

2   claims occurring during reexamination.

3

4   **D.    Need for <u>Markman</u> Hearing**

5         Sorensen correctly argues that the Court's determination of whether claim

6   cancellations during reexamination changed the scope of the '184 patent "is entirely

7   dependent upon the Court adopting pre- and post-reexamination constructions of the term

8   'laminated.'" (Pl. Opp. Mem. at 17.)   The process for determining whether there is a

9   substantive change between the pre- and post-reexamination versions of a patent claim

10  requires the Court to perform the same type of analysis as when resolving a typical claim

11  construction dispute.[4]  Sorensen contends, and the Court agrees, that full and proper claim

12  construction proceedings would greatly aid the resolution of Defendants' absolute intervening

13  rights argument.

14        In <u>University of Virginia</u>, Defendants' primary case in their moving brief, the Court held

15  full claim construction proceedings prior to resolving the intervening rights issue.  That case

16  involved a patent for magnetic resonance imaging ("MRI") machines, which use magnetic

17  fields to take multiple pictures of a patient.  Independent Claim 1 of the patent described

18  steps taken by the machine to create the pictures, including: (a) creating a magnetic field;

19  (b) acquiring data; (c) allowing the magnetic field to dissipate during a "magnetization

20  recovery period"; and (d) repeating the cycle.  755 F. Supp. 2d at 712-14.  The patent defined

21  the range of possible durations for the "magnetization recovery period" in other locations, and

22  several of these locations indicated a possible recovery period with a time of zero.  <u>Id.</u> at 718-

23  19.   Most notably, dependent Claim 4 claimed "[t]he method of claim 1, wherein said

24  magnetization recovery period has a time of zero."  <u>Id.</u> at 719.

25  //

26

27        [4]<u>See  Laitram Corp. v. NEC Corp.</u>, I63 F.3d 1342, 1346-47 (Fed. Cir. 1998) (citing
    <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517

28  U.S. 370 (1996)) ("This court reviews without deference the district court's conclusion that
    the reexamined claims remained identical in scope. . . . This rule flows from the general
    principle that 'the interpretation and construction of patent claims, which define the scope of
    the patentee's rights under the patent, is a matter of law, exclusively for the court.'").

After the initiation of the lawsuit, the defendants applied for an ex parte reexamination of the patent.  Id. at 714-15.  The examiner rejected all claims on the grounds that a magnetization recovery period with a time of zero was anticipated by the prior art.  The plaintiff thereafter canceled Claim 4, and the examiner withdrew the objections.  Id. at 715. The defendant then moved for summary judgment based on absolute intervening rights, arguing that the plaintiff's cancellation of Claim 4 substantively narrowed Claim 1, and the court granted the defendant's motion.

To reach its conclusion, the court conducted a Markman hearing to determine the range of recovery periods allowed under the pre-reexamination version of the patent. Following the Markman hearing, the court construed the pre-reexamination "magnetization recovery period" to cover a range of possible durations that included a time of zero.  Id. at 718-19.  The parties agreed that the post-reexamination period did not include a time of zero. In its decision, the Court reached the intervening rights issue only after a lengthy claim construction discussion, informed by the earlier Markman hearing.[5]

In the present case, Defendants argued at the summary judgment hearing that under Marine Polymer, the mere fact that a patent holder canceled claims during reexamination in order to persuade an examiner to change its construction of a key term and withdraw prior art rejections suffices to establish a substantive change in the scope of the patent.  The Court disagrees. The Federal Circuit's holding in Marine Polymer that the claim cancellations made during reexamination "actually and substantively" changed the scope of the patent rested on its finding that the PTO's narrow post-reexamination construction of the "biocompatibility"

---

[5]This Court notes that the claim construction issues related to the intervening rights arguments in Marine Polymer and University of Virginia were more straightforward than the issue before this Court.  Both those cases involved terms in independent claims (i.e. "biocompatibility" and "magnetization recovery period") that necessarily included a range of values.  The dependent claims contained embodiments with different discrete values (i.e. specific reactivity levels and specific time periods).  The patent holders in those cases canceled dependent claims to remove discrete values from the ranges contemplated in the independent claims. By comparison, the '184 Patent nowhere expressly contains a definition of the term "laminated walls," "laminated walls" does not refer to a range of discrete values that are listed in the patent's dependent claims, and the argument that the pre-reexamination definition of "laminated walls" should be the "edges" definition requires reference to illustrations in the patent rather than relying on the patent's plain language.  In short, the elimination of Claims 2 and 4 does not have an obvious effect on the meaning of Claim 1.

differed from the proper pre-reexamination construction of that term.  2011 WL 4435986, at *6.  Similarly, the court in University of Virginia did not conclude that the claim cancellations alone sufficed to create intervening rights.

Thus, contrary to Defendants' position, the mere fact that Sorensen canceled dependent claims during the reexamination hearing in order to persuade the PTO to adopt a narrow construction of "laminated walls" does not by itself substantively change the scope of the independent claims of the '184 Patent.  Rather, Marine Polymer confirms that before granting absolute intervening rights to Defendants, the Court must first determine the proper construction of "laminated walls" in the pre- and post-reexamination patent.  Only then can the Court compare its pre-reexamination construction to the post-reexamination construction and determine whether any difference in the pre- and post-reexamination constructions "actually and substantively" changed the scope of the patent.  The Court declines Defendants' invitation to construct "laminated walls" without the benefit of full claim construction proceedings.

### Conclusion

Based on the forgoing, the Court DENIES Defendants' motion for summary judgment without prejudice.  Defendants may renew their motion after the completion of the claim construction proceedings.

**IT IS SO ORDERED.**

Dated: December 22, 2011

**HONORABLE BARRY TED MOSKOWITZ**
United States District Judge

11

08cv0060 BTM (CAB); 08cv0070, 08cv0305